No. 12927

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

DOUBLE X RANCH, INC., a Delaware
Corporation, and STUART M. KAPLAN
as Trustee in Bankruptcy for Great
Western Ranches, Inc.,

                Plaintiffs and Respondents,

-vs-

SAVAGE BROTHERS, et al.,

                Defendants and Appellants.

---

Appeal from:  District Court of the Thirteenth Judicial District,
           Honorable Charles Luedke, Judge presiding.

Counsel of Record:

    For Appellants:

        Arthur P. Acher argued, Helena, Montana

    For Respondents:

        Hauf, Forsythe and Richard A. Kramer, Billings,
         Montana
        John A. Forsythe appeared, Billings, Montana
        Richard A. Kramer argued, San Francisco, California

---

                Submitted:  May 7, 1975

                Decided:  JUN 1 8 1975

Filed:  JUN 1 8 1975

*Thomas J. Kearney*
                    Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiffs filed an action in the district court, Yellowstone County, to collect on four promissory notes executed by defendants pursuant to a corporate reorganization plan, under Chapter X /federal Bankruptcy Act. Defendants admitted executing the notes but alleged failure of consideration, fraud, and duress as defenses and counterclaimed for damages based on alleged negligence and wrongful acts of the trustee in bankruptcy. The district court granted summary judgment to plaintiffs on all issues. Defendants appeal.

Plaintiffs are Double X Ranch, Inc., the payee on three of the notes, and Stuart M. Kaplan, the trustee in bankruptcy and payee on the fourth note. Defendants are Savage Bros., a partnership, and ten persons surnamed Savage who were sued individually and doing business as Savage Land and Livestock Company, Inc.; Savage Land and Livestock; and Savage Bros., Inc., a corporation. Defendants are the makers or guarantors of the notes and will be referred to collectively as Savage Bros.

In 1969 a Nevada corporation, Great Western Ranches, Inc., was formed. The objective was to have various investors convey their ranch properties to Great Western in exchange for shares of stock. Defendants, among others, transferred three tracts of land, personal property, and 150 thoroughbred and quarter horses with their registration certificates to Great Western, receiving shares of stock in exchange. Plaintiff Double X contributed $1,000,000 cash to Great Western and received shares of stock for its contribution.

Great Western hoped to attract an additional $4,000,000 from European investors but was unable to do so. On July 1, 1970, Great Western filed a petition for corporate reorganization under Chapter X of the federal Bankruptcy Act with the United States

- 2 -

District Court in San Francisco. 11 U.S.C.A. §§501-676. This reorganization court appointed plaintiff Kaplan as trustee, and eventually approved a corporate reorganization plan for Great Western.

The overall purpose of the corporate reorganization plan was to provide for an orderly unwinding of the transactions involved in the formation of Great Western and for the protection of its creditors. Among other things, investors in Great Western were permitted to reclaim their property upon these specific conditions:

(1) payment of 10¢ per share for the costs of administering the reorganization;

(2) payment of an additional 3¢ or 4¢ per share (depending on the time of payment) to Double X as reimbursement for its $1,000,000 cash investment;

(3) payment to the trustee or Double X, respectively, the amounts their property had been benefited, either while held by Great Western or by the cash contribution of Double X. Additionally, the corporate reorganization plan provided that consenting reclaimants irrevocably waived "any right to sue, litigate, or obtain or execute upon a judgment against [Great Western] or the trustee * * * irrespective of whether such rights are known or suspected to exist by the consenting reclaimant at the time the plan becomes effective." The plan also provided that the reorganization court retained jurisdiction over "all questions arising in the course of consummation of the plan and not specifically provided for."

Defendants accepted and complied with the corporate reorganization plan by satisfying the conditions precedent to reclaiming their property. They paid the cash assessments required and executed the four promissory notes sued upon for the balance.

- 3 -

The trustee executed and delivered to defendants transfer documents on their reclaimed property pursuant to the plan.

Defendants defaulted on payment of the four promissory notes. Plaintiffs, as payees, filed suit in state district court in Billings, Montana, to collect the balances owing on the notes, with interest and attorney's fees. Defendants responded with a pleading they characterized as an "answer, counterclaim and cross-complaint" in which they admit execution of the notes but claim failure of consideration, fraud, and/duress as affirmative defenses, and counterclaim for damages based on alleged negligence and wrongful acts of the trustee.

The facts underlying the three affirmative defenses and the counterclaim are intermingled and overlapping. For clarity of analysis, the basic factual contentions of defendants can be summarized as follows:

(1) The trustee represented and warranted that defendants' 150 thoroughbred and quarter horses, with registration certificates, would be returned to them upon payment of the cash assessments and execution of the four promissory notes, which the trustee failed to do.

(2) The trustee represented and warranted to defendants: (a) that the assessments for restitution to Double X were traceable to the $1,000,000 cash contribution of Double X to Great Western and benefited the property which defendants were reclaiming and (b) that the amounts payable by the reclaiming stockholders were correct; that notwithstanding these representations and warranties by the trustee, defendants were charged with items not properly chargeable against them under the plan.

(3) Plaintiffs exerted economic coercion on defendants in that defendants were compelled to execute the promissory notes because otherwise their property would be lost. Defendants had

- 4 -

contracted to sell the reclaimed property to third parties and were faced with other obligations against the property which could be foreclosed and thus could not get it back unless they executed the promissory notes.

(4) Damages sustained by defendants by reason of the foregoing facts more than offset the amounts due on the promissory notes.

Plaintiffs filed an "Answer to First Affirmative Defense, Counterclaim and Cross-Complaint" placing in issue all of defendants' contentions. Additionally, waiver by the defendants was alleged.

Pretrial discovery consisting of admissions, interrogatories and answers was had by both plaintiffs and defendants. Plaintiffs then moved for summary judgment. Thereafter defendants moved for additional pretrial discovery, requiring plaintiffs to (1) answer six interrogatories more fully; (2) require the trustee and an officer of Double X to appear in Billings for depositions; and (3) require plaintiffs to produce for inspection unspecified "relevant records" in their possession.

The district court denied defendants' motion for such further pretrial discovery and granted summary judgment to plaintiffs. Thereafter defendants moved to vacate or amend the judgment, or alternatively for a new trial. Following denial of these motions, defendants appealed.

The controlling issues on appeal can be summarized in this manner:

(1) Are the issues raised by defendants res judicata?

(2) Did the state district court have jurisdiction?

(3) Are there genuine issues of material fact precluding summary judgment for plaintiffs?

(4) Should the district court have permitted additional pretrial discovery?

- 5 -

Initially, defendants contend that the issues they have raised in this action, viz. failure of consideration, fraud, duress, and negligent or wrongful acts of the trustee in carrying out the corporate reorganization plan have not been adjudicated by the federal reorganization court, could not have been raised previously, and are not res judicata.

Plaintiffs, on the other hand, contend that the issues raised by defendants are res judicata under Section 224(1) of the federal Bankruptcy Act. The gist of their contention is that once a corporate reorganization plan is confirmed by the federal reorganization court, all issues resolved by the plan and all questions that could have been raised relating to the plan are res judicata and cannot later be litigated in any court.

Section 224(1) of the Bankruptcy Act, 11 U.S.C.A. §624, provides:

> "Upon confirmation of a plan--
> (1) the plan and its provisions shall be binding upon the debtor, upon every other corporation issuing securities or acquiring property under the plan, and upon all creditors and stockholders, whether or not such creditors and stockholders are affected by the plan or have accepted it or have filed proofs of their claims or interests and whether or not their claims or interests have been scheduled or allowed or are allowable * * *".

6A Collier on Bankruptcy, para. 11.13[2], explains this provision in this language:

> "Thus § 224(1) 'makes a plan binding upon all parties once it is confirmed', and all questions which could have been raised appertaining thereto become res judicata."

See: In re Union League Club of Chicago, 203 F.2d 381 (7th Cir. 1953); Ely v. Donoho, 45 F.Supp. 27 (S.D.N.Y. 1942).

The United States Supreme Court has held the reorganization plan, when confirmed, res judicata even where error in the plan is alleged. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134,

- 6 -

83 L.ed. 104.

The issues raised by defendants in the instant case, with one exception, could not have been raised in the bankruptcy court at the time of confirmation of the reorganization plan. They are bottomed on events that arose thereafter. The facts giving rise to defendants' claims and defenses have never been litigated in any court. Res Judicata cannot be used as a tool to deny defendants their day in court.

The exception is the claim by defendants that the trustee charged them with items not properly chargeable against them under the provisions of the reorganization plan. Essentially, defendants contend that certain items incurred in the operation of the View Point Ranch in Oregon should not have been charged against them, and that Double X was not entitled to any reimbursement because their cash contribution was in reality a loan made to secure lucrative contracts from Great Western.

However, the federal reorganization court approved the assessment schedule. To the extent that the trustee's charges reflect the plan's assessment schedule, defendants' claim is res judicata.

The second issue for determination is whether the state district court has jurisdiction over the counterclaim and remaining defenses of defendants. Plaintiffs argue that consideration of these issues by state courts is precluded by the continuing, exclusive jurisdiction of the bankruptcy court over the debtor's property, citing Section 111 of the Bankruptcy Act, 11 U.S.C.A. § 511.

That argument ignores the fact that this suit for collection on the notes was a plenary proceeding brought by the trustee in state court. The applicable rule of law has been aptly stated in 6 Collier on Bankruptcy, para. 3.21, p. 560:

"If the trustee, receiver or debtor in posses-
sion institutes a plenary action in a state
court, that court has jurisdiction of all the
incidents of the litigation within its scope."

Were it otherwise, a monstrous injustice would result. The

trustee, having chosen the state court as his forum, could

eliminate any defenses or counterclaims to his action without

regard to their merits by the simple expedient of claiming ex-

clusive jurisdiction in the reorganization court. We hold that,

while the state court must clearly enforce the terms of the re-

organization plan, it cannot refuse to entertain defenses or

related counterclaims which allege events occurring after con-

firmation of the plan merely on the ground of exclusive juris-

diction in the reorganization court. For further authority,

see: Brown v. Gerdes, 321 U.S. 178, 64 S.Ct. 487, 88 L ed 659;

Ohio Oil Co. v. Thompson, 120 F.2d 831 (8th Cir. 1941); Dawson

v. National Life Ins. Co., 156 Tenn. 306, 300 S.W. 567.

We next determine whether or not there exist genuine

issues of material fact precluding summary judgment on the re-

maining issues. The factual contentions of the defendants have

already been summarized, and all relate to the affirmative de-

fenses and counterclaim. To sustain the summary judgment,

plaintiffs must have established the absence of any issue of

material fact as to each of the defenses and the counterclaim.

Roope v. The Anaconda Co., 159 Mont. 28, 494 P.2d 922; State

ex rel. City of Helena v. District Court, ____Mont.____, ____

P.2d____, 32 St.Rep. 581.

The defense of economic duress is clearly susceptible to

summary judgment in favor of plaintiffs. There is simply no

allegation here of an unlawful detention of property, as required

by the statutory definition of duress contained in section 13-305(2),

R.C.M. 1947. Defendants' allegations amount to nothing more than

a statement of their economic distress at the time they executed

the notes. That is clearly not enough to validate the defense. Pederson v. Thoeny, 88 Mont. 569, 295 P. 250; McNussen v. Graybeal, 146 Mont. 173, 405 P.2d 447.

The affirmative defense of failure of consideration was also a proper subject for summary judgment in favor of plaintiffs. The consideration for defendants' promissory notes was bills of sale from the trustee covering their reclaimed ranch and personal property situated thereon. In accord with the terms of the plan, the trustee conveyed only his interest in the properties. The import of that form of conveyance is evident in a letter written to the trustee by defendants' attorney. In that letter, he wrote:

> " * * * Said Bills of Sale will not be construed by the said shareholders [defendants here] to include any warranty by the Trustee that those items of personal property listed on the Exhibits to the Bills of Sale are actually physically located on the said farms which are subject to the Order of Rescission made a part of the Bills of Sale, or that any or all of such items of personal property ever existed, and said shareholders hereby waive any claim they may have or that may arise against Great Western Ranches, Inc., against Stuart M. Kaplan, as Trustee of Great Western Ranches, Inc., and each of them, relating to title to said personal property, or any of it." [Bracketed material added.] (Emphasis added.)

Defendants received what they bargained for--the conveyance of the trustee's interest in certain personal property, including the thoroughbred and quarter horses, devoid of any assurance that the property actually existed or that the trustee had any title to convey. That was the effect of the Bill of Sale, and was expressly recognized by the defendants. They cannot now be heard to claim failure of consideration.

Defendants' last affirmative defense is the allegation that execution of the notes was induced by fraud. The elements of that fraud are alleged to be false representations that the amounts assessed against defendants' stock were correct; that

assessments in favor of Double X were traceable to its cash contribution; and that 150 thoroughbred and quarter horses, with their registration papers, would be among the reclaimed property conveyed to the defendants. As already discussed, the confirmation of the reorganization plan by the reorganization court made issues relating to the assessments res judicata, and therefore they cannot be relitigated in Montana courts. The only element of this defense which remains to be considered here is that which alleges false representations by the trustee concerning the horses and their registration papers. We note that these allegations have been denied by plaintiffs.

The letter from defendants' attorney, alluded to heretofore, belies this allegation. It evidences the defendants' understanding that the existence of and title to the horses was not being warranted by the trustee in his conveyance. Under the rules governing summary judgments, the letter established a sufficient absence of genuine factual issue on this point to shift the burden of demonstrating such issue to defendants. The record here is devoid of such evidence, the only allusion thereto was the bareallegation in the pleadings. Accordingly, the district court was correct in awarding summary judgment to plaintiffs on this issue.

On the basis of the "wrongful acts" or negligence alleged in the affirmative defenses, defendants have also counterclaimed for damages. Since the defenses have proved faulty, as a matter of law, the counterclaim necessarily suffers the same deficiency. There are no genuine issues of material fact. The facts contained in the record demonstrate that plaintiffs are entitled to summary judgment on all issues, as a matter of law.

The final issue raised by defendants concerns the district court's denial of their motion for further discovery to "seek

evidence to support the allegations of the affirmative defense and Cross-Complaint." The district court, without objection, had ordered that all discovery be completed by June 15, 1974. Defendants' motion for further discovery was made on June 19, 1974, offering no excuse for delay. The district court's refusal to grant that motion was not an abuse of discretion, for two reasons:

(1) all parties had ample opportunity to conduct discovery, with knowledge of the date by which it must be completed, and

(2) the affirmative defenses and counterclaim are defective, as a matter of law, and could not be salvaged by additional facts, even if it were assumed that further discovery would produce additional, material facts. Responsibility for failure to discover facts supporting defendants' defenses and counterclaim must be assessed against the defendants, who failed to complete their discovery within the alloted time.

The judgment of the district court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 11 -

Mr. Justice Wesley Castles specially concurring:

I concur in the result reached, but would not enter into the discussion on so-called issues which are not raised as issues at all. The only issue raised by appellants is whether there are genuine issues of material facts to support a summary judgment. With that part of the opinion, I agree.

_____
Justice.