Malcolm B. Stark, Appellant, v. Chicago Title and Trust Company, Appellee.

Gen. No. 42,113.

354

Heard in the second division of this court for the first district at the February term, 1942. Opinion filed November 17, 1942.

FOLSOM, GROSSBERG, BRILL & MAY, of Chicago, for appellant.

HAROLD L. REEVE and ELMER M. LEESMAN, both of Chicago, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

Plaintiff sued to recover damages from defendant for its alleged violation of an escrow agreement under which it was made depositary, with its consent and for a consideration, of certain stock certificates and other documents which it was authorized to hold and directed to deliver subject to the written instructions of the parties. Trial by the court without a jury resulted in finding and judgment in favor of defendant for costs, from which plaintiff has taken an appeal.

There is substantially no dispute as to the essential facts, which are set forth in the pleadings and are supported by testimony adduced upon trial. It appears that February 17, 1937, Malcolm B. Stark and J. I. Sperling executed and delivered to Chicago Title &

* See Callaghan's Illinois Digest, same topic and section number.

Trust Company an agreement in escrow for deposit by Sperling, on behalf of Superior System, Inc., of six bearer notes signed respectively by B. H. Weiss as president and Samuel Lancet as treasurer, two for $2,500 and four for $2,300 each, the first one due March 15, 1937, and the others maturing one month apart; and for the deposit by Stark, a lawyer in New York city, of two stock certificates aggregating 75 shares and constituting 25 per cent of the capital stock of Superior System, Inc., of which he was the owner, together with his resignation as officer and director of the corporation, waiver, and certain minutes of a special meeting of the board of directors held February 17, 1937.

Defendant accepted the escrow and was authorized and directed to hold the respective deposits subject to the following instructions:

"First—Receive the payment on the notes deposited and forward the collections therefor to the order of Malcolm B. Stark.

"Second—Cancel notes as paid and deliver same to the order of J. I. Sperling.

"Third—Upon payment of the fourth note, due June 15th, 1937, deliver the resignation as an officer and minutes of special meeting of Board of Directors held February 17, 1937, and release of salary as an officer signed by Malcolm B. Stark, to the order of J. I. Sperling.

"Fourth—Upon payment of the final note, deliver the stock certificates deposited herein, together with the executed proxy and resignation of directorship to the order of J. I. Sperling.

"Fifth—That in the event of default in the payment of any of the aforesaid notes, the stock certificates, proxy agreement, and resignation of directorship, deposited pursuant to this escrow by Malcolm B. Stark, shall be returned to said Malcolm B. Stark and any and all payments of notes made to Malcolm B. Stark

heretofore hereunder shall be retained by Malcolm B. Stark as liquidated damages and not as a penalty."

The first two notes were paid at maturity. With plaintiff's consent, payment of the note which became due May 15 was extended $800 to May 22, $800 to May 29 and $700 to June 5. In consenting to the extension plaintiff wrote the escrowee that, "in the event of a default by Superior System in the payment of any one of these three sums upon the due dates, I shall preserve my remedies with respect to the original note #3." A similar letter was written relative to extension of the note due June 15 to June 18, June 25 and July 2, respectively. Notes 3 and 4 were paid as provided by the letters of extension and the proceeds of the four notes, aggregating some $9,600, were transmitted by defendant to Stark, who claimed the sums paid as liquidated damages under the escrow agreement because of default in payment of notes numbered 5 and 6. Note No. 5 fell due Thursday, July 15, 1937. On the succeeding day, July 16, defendant sent a telegram to plaintiff informing him that the note had not been paid. Thereafter, on the same day, defendant received a letter from Sperling, attorney for Superior System, Inc., advising that his client, the signer of the note, had filed a voluntary petition in bankruptcy for reorganization in the federal court under sec. 77-B, and by reason thereof was unable to make any payments on the notes remaining due without order of court. The letter advised defendant to keep all matters pertaining to the escrow in *status quo* until further notice. After receipt of this letter from Sperling and on the same day (July 16) defendant received a telegram from plaintiff asking for the immediate return of the certificates of stock, proxy agreement, and the resignation of Stark as director. July 17 fell on Saturday and the business day of the Chicago Title & Trust Company ended at 12:30 p. m. On that day defendant received a letter from plaintiff, which had

been sent by registered air mail, confirming his telegram of the previous day, and again demanding return of the stock certificates and other deposits. Defendant immediately advised Stark by telegram that it had received notice of the filing of a voluntary petition in bankruptcy by Superior System, Inc. Thereafter, Monday, July 19, defendant received a letter from Sperling dated July 17, informing defendant on behalf of Superior System, Inc., that he intended making an application in the federal court for a general restraining order not later than the succeeding Wednesday, requesting that defendant retain all deposits in the escrow, and suggesting that he (Sperling) be notified by telephone before defendant took any steps for redelivery of the deposits to plaintiff. On that same day, July 19, defendant was served with notice in the bankruptcy proceeding, notifying it that on the following day at the opening of court Superior System, Inc., would apply for an injunction restraining defendant from releasing, relinquishing or returning any of the deposits made with it under the escrow agreement. Attached to the notice was a copy of the petition to be presented, in which the escrow instruments were described and in which it was stated that Superior System, Inc., had prior thereto July 15, 1937 filed its petition for reorganization under sec. 77-B and was therefore without power to make any further payments under the terms of the agreement. The restraining order in the bankruptcy proceeding was entered Tuesday, July 20. Defendant thereupon withheld compliance with plaintiff's demand for return of the documents until the dissolution of the injunction in October 1937, following the summer vacation.

After defendant had filed its amended answer to the complaint the motion judge of the circuit court sustained plaintiff's motion to strike portions of the answer, including averments that July 16, following receipt of Sperling's letter and plaintiff's telegram de-

manding the immediate return of the escrow deposits, Joseph D. Shelly, defendant's chief escrow officer, consulted with Edmund J. Reynolds, one of the attorneys regularly employed by defendant to counsel and advise it on matters of law concerning its proper conduct in matters of this kind, and that Reynolds and Shelly thereupon consulted with George Gillette, defendant's general counsel and consultant, who advised Shelly that it would be perilous to accede to plaintiff's demand without further inquiry into the bankruptcy proceeding; that thereupon on Saturday, July 17, Shelly communicated with Sperling over the telephone and inquired what, if any, orders or proceedings had been had or taken in the bankruptcy matter with reference to the escrow or the subject matter thereof, and informed him of the directions defendant had received by telegram from plaintiff July 16, and was thereupon informed by Sperling that Superior System, Inc., was about to apply for an injunction in the district court of the United States to restrain defendant from returning to plaintiff the documents demanded by him in his telegram. Upon trial defendant offered to prove the foregoing averments but the trial court properly sustained plaintiff's objections thereto because the motion judge had stricken the portions of the amended answer in which the foregoing averments were made, and defendant assigns as cross errors both the ruling of the motion judge in sustaining plaintiff's motion to strike those portions of the amended answer, and of the trial judge in sustaining plaintiff's objections to the offer of proof.

Since conversations with its attorneys were not offered to prove the soundness of the advice given, but merely to show the care exercised by the escrowee under the circumstances, we think defendant was entitled to show that it acted in good faith in consulting and following the advice of its attorneys as part of its defense. No assignment of errors was necessary to raise the point (*McNulty v. Hotel Sherman Co.*, 280 Ill.

App. 325), but under section 74 of the Civil Practice Act (par. 198, ch. 110, Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 104.074]) the entire record comes to this court for review, and any erroneous action of the trial court may be corrected if the point is properly reserved, as it was in the case at bar by the assignment of cross errors. *Hillmer v. Chicago Bank of Commerce*, 375 Ill. 266. Had the foregoing averments of the amended answer not been stricken, the trial judge could have received evidence tending to show the considerations which prompted defendant, in the exercise of caution, to hesitate before returning the deposits. No one could then foresee what position the debtor or its trustee in bankruptcy would take with respect to the stock in escrow. Since the jurisdiction of the federal court attached at once upon the filing of the petition (*In re Long Island Properties, Inc.*, 40 F. Supp. 611), defendant, who had been given special notice of the pendency of the bankruptcy proceedings, might have subjected itself to a charge of contempt of court if it had sent the stock to plaintiff in New York, out of the jurisdiction of the court. Moreover, defendant may have been advised that the trustee in bankruptcy, or some person representing the debtor, might later claim that the retention of $9,600 by Stark as liquidated damages constituted a penalty, notwithstanding the provision of the escrow agreement that it be treated as liquidated damages, and if that question were ultimately resolved against Stark, defendant might be required to return the sums received as proceeds of the first four notes or parts thereof, as a condition precedent to the delivery of the 75 shares of stock to Stark. In *Giesecke v. Cullerton*, 280 Ill. 510, the court observed that no branch of the law is involved in more obscurity by contradictory decisions than whether a sum specified in an agreement to secure performance will be treated as liquidated damages or a penalty, and that each case must depend upon its own peculiar and attendant circumstances. In any

event, there was at least sufficient doubt as to whether this was a penalty or liquidated damages to cause hesitation in the mind of the escrowee as to what its course should be, and under the circumstances the law would not require it to determine hastily for itself what the rights of the parties might be. These considerations may well have entered into Gillette's advice to Shelly that it would be perilous to accede to plaintiff's demand without further inquiry into the bankruptcy proceeding.

Although plaintiff advances numerous propositions of law as ground for reversal, some of which are not argued, the gravamen of his contentions is that Stark's telegram of July 16 amounted to a positive unequivocal direction or instruction to the depositary for the return of the documents held in escrow; that the terms of the agreement left no discretion to the defendant, except to follow the instructions of the escrow agreement to the letter, regardless of bankruptcy or other proceedings, other than an injunction; and therefore by failing to comply immediately with plaintiff's demand and with the directions of the escrow agreement, defendant rendered itself liable in damages for violation of its duties.

There is substantially no disagreement between counsel as to the effect of an escrow agreement. From the time the deposit is made the escrowee becomes the trustee of both the party making the deposit and the one for whose benefit it is made. It is likewise a settled rule that when a disagreement arises between the parties as to the right to delivery, the escrowee is not required to act upon his own responsibility. In such case a *bona fide* reasonable detention of the papers and securities deposited in escrow is justified for the purpose of ascertaining the true rights of the parties. *Sliscovich v. Scandinavian-American Bank,* 88 Wash. 674, 153 Pac. 1077; *Farming Corporation v. Bridgeport Bank,* 113 Neb. 323, 202 N. W. 911. In *Warner v. Mettler,* 260 Ill. 416, the court said that

" 'A trustee cannot be expected to incur the least risk in the distribution of the trust fund. Therefore, where there is a mere shadow of doubt as to the rights of the parties, he may require a bond of indemnity,' " and in *Kaufman v. Loomis,* 110 Ill. 617, it was held that "If, in good faith, as a trustee, he exercised his honest judgment in so refusing, and acted, as he supposed, for the best interests of all concerned,—unless that judgment was grossly erroneous, with the lights he had,—he surely cannot be charged with wronging any one by acting upon his judgment." In the case at bar the fact alone that Superior System, Inc., had filed a petition in bankruptcy, coupled with the knowledge that the bankruptcy court had jurisdiction of the matter from the time the petition was filed, justified the escrowee's hesitation before yielding to Stark's insistence for the immediate return of the shares of stock. Upon two other occasions plaintiff had manifested the absence of any urgency. When note 3 fell due he notified the escrowee that payment might be made in instalments extending over three weeks thereafter, and he did the same with respect to note 4. Furthermore, the escrow agreement provides that in the event of default in the payment of any of the notes, the documents deposited should be returned to Stark, without specifying their *immediate* return, as Stark requested. There are decisions holding that the duty of an escrowee in such a situation is not to act immediately, but that he is entitled to wait until after reasonable time is given, notwithstanding the time limit named in the contract. *Bott v. Wright,* 62 Tex. Civ. App. 632, 132 S. W. 960; *Smith v. Moore* (Tex. Civ. App.), 155 S. W. 1017. The short space of two days within which the various events herein recited occurred, cannot well be urged as an unreasonable delay. Thereafter, the injunction of the federal court intervened to enjoin defendant from returning the shares of stock until the injunction was dissolved.

Considerable space is devoted by counsel in their briefs to the question of damages. Plaintiff alleged and sought to prove that he was deprived of an opportunity to dispose advantageously of the stock certificates, which depreciated greatly in value because of defendant's failure to deliver them promptly on Stark's request, and he offered in evidence a contract with one Eugene K. Tonkonogy for resale of the stock, and also sought to prove that he had incurred certain expenses, including attorney's fees, in procuring a dissolution of the injunction, all of which the court refused. As the record stands, no damages were shown. In view of our conclusion that defendant was not liable, the determination of the question whether the proffered evidence was admissible, is of secondary importance.

We are of opinion that the circuit court properly found the issues in favor of defendant, and the judgment in its favor for costs is therefore affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.