Toro Petroleum Corporation, Plaintiff-Appellant, *v.* Harry B. Newell *et al.*, Defendants.—(Chicago Title and Trust Company, Defendant-Appellee.)

(No. 57601;

First District (5th Division)—August 23, 1974.

*Rehearing denied September 23, 1974.\**

*Supplemental opinion filed November 14, 1975.*

---

\* *The original opinion was also published at 22 Ill.App.3d 542.*

224

Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellant.

Concannon, Dillon, Snook & Morton, of Chicago (John B. Dillon, of counsel), for appellee.

Mr. JUSTICE BARRETT delivered the opinion of the court:

Plaintiff appeals from judgment entered against defendant Chicago Title and Trust Company (Chicago Title), alleging that the damages assessed by the trial court in the amount of $1,500 are patently inadequate. Chicago Title has cross-appealed, seeking reversal of the judgment and entry of judgment in its favor.

The case was tried on plaintiff's four-count amended complaint. The first two counts were against Harry B. Newell, individually and doing business as Inland Credit Company. Plaintiff sought to void an escrow agreement on the grounds that Newell committed fraud in the execution of the agreement and had a pre-contract intent not to abide by his agreements with plaintiff. The other two counts were against defendant Chicago Title for breach of an escrowee's fiduciary duty. Count III sought the return of the $20,000 escrow deposit. Count IV alleged wilful and wanton misconduct and sought recovery of attorney's fees, court costs and additional damages based on inconvenience and embarrassments, travel and litigation expenses.

After further pleadings, motions, and trial, the court entered judgment in favor of plaintiff against Newell individually and doing business as Inland Credit Company. Compensatory damages were assessed at $20,000 plus interest and costs; exemplary damages were assessed at $10,000. Four days later the court found in favor of plaintiff and against Chicago Title on Count III assessing damages at $1,500 plus costs and found in favor of Chicago Title and against the plaintiff on Count IV.

Newell filed notices of appeal and Chicago Title cross-appealed, but Newell died while his appeal was pending. This court has dismissed Newell's appeal.

I.

Before we reach the issue of damages raised by plaintiff, we must first decide the question raised on cross-appeal: whether the trial judge erred in finding that Chicago Title breached its fiduciary duty.

The issue centers around the use of a strict joint order escrow instructions form that Newell and a Mr. Strauss obtained from Chicago Title. The form is a single page; but, the upper portion of the form can be detached from the lower portion along a perforated line. The upper portion of the form contains blank spaces for the escrow number, the

person or office to which the matter is referred, and the date. The form states, in relevant part:

"The accompanying [*Dollars and/or documents*] are deposited with the Chicago Title and Trust Company to be delivered by it only upon the joint order of the undersigned or their respective legal representatives or assigns.

\*   \*   \*

In no case shall the above mentioned deposits be surrendered except on an order signed by the parties hereto, their respective legal representatives or assigns, or in obedience of the process or order of a court as aforesaid."

At the bottom of the upper portion, below the lines for signatures and addresses of the parties, there is printed "(Please see reverse side for suggestions with respect to the use of this form.)."

The lower or disbursement portion of the form has blank spaces for the escrow number and the date. It is addressed to Chicago Title and states, "You are hereby authorized and directed to dispose of the items deposited into the above numbered Escrow in the following manner: \*   \*   \*." There follow words and spaces designed to direct the payment of money or delivery of documents to designated persons. At the bottom of the lower part are two signature lines.

The "Suggestions With Respect To The Use Of This Escrow Form And The Routine For Processing The Escrow," found on the reverse side of the form, contain the following:

"(4) The upper portion of the form should be detached and mailed or delivered to Chicago Title and Trust Company together with the check(s) and any document(s) described in the Escrow Instructions. The lower portion of the form should be retained by the parties to the Escrow.

(5) Upon receipt of the Escrow Instruction, \*   \*   \* [t]he number assigned to the Escrow will also be given [to the parties]. The number should then be entered in the lower portion of the form retained by the parties to the Escrow.

(6) When the parties are ready to disburse the Escrow, they should fill in and sign the lower portion of the form and mail or deliver it to the office of Chicago Title and Trust Company to which the Escrow was referred."

The parties in the instant case did not follow these directions. The undisputed evidence in the case is essentially as follows:

On August 13, 1970, Kevin O'Connor, plaintiff's treasurer, and Charles Finnerty, plaintiff's representative, came to Chicago from their office in

Houston, Texas, to meet with Newell for the purpose of securing a commitment for a loan to plaintiff of $1,000,000. At the meeting an application for a loan of that amount was signed by O'Connor for plaintiff and by Newell doing business as Inland Credit Company. After examining the Chicago Title strict joint order escrow instructions forms and directing the language to be inserted on some of the blank lines, O'Connor signed on behalf of plaintiff both the lower and upper portions of the form. The escrow deposit was described as "TWX#910-881-2712 for $20,000.00 to the Chicago Title and Trust Company—by TORO PETROLEUM CORPORATION." O'Connor testified that before signing he questioned the advisability of signing the lower portion before it had been completed. He was advised by Newell, however, that it was customary to sign both portions of the form, and that by signing the form at that time, O'Connor would avoid future travel to Chicago from Texas. Finnerty and O'Connor then returned to Texas.

On August 19, 1970, Finnerty, plaintiff's representative, flew from Texas to Chicago to meet with Newell. He took with him an amendment to the loan application that plaintiff's lawyers had prepared and a cashier's check of the Bank of Texas payable to the order of Chicago Title in the amount of $20,000. The $20,000 was a "good faith" deposit toward the full commission that would be due Newell if he secured an appropriate loan for plaintiff. At the top of the check was typed, "Escrow deposit for Toro Petroleum Corp. & Inland Credit Co. per attached 8-10-70 amendment & supplement to application for loan."

While in Chicago, Finnerty secured Newell's signature on both the original and a copy of the amendment to the loan application and delivered to Newell the signed original of the amendment and the cashier's check.

On August 20, 1970, Newell opened Strict Joint Order Escrow No. 328640 with Chicago Title by delivering the escrow instructions previously executed by the parties to it and depositing the cashier's check for $20,000 with Chicago Title. Sherry Crumbaugh, an escrow clerk at Chicago Title, typed in the escrow number on both the upper and lower portions of the escrow instructions, the addresses of plaintiff and Newell under their signatures on the upper portion of the form and her name. Pursuant to Newell's verbal directions she completed line 1 of the lower portion of the escrow instructions to read "Pay $20,000.00 to Inland Credit Company," and added a signature line above which she typed "Inland Credit Company," and below which she typed "By: A. B. Newell." Shortly thereafter, while Newell was still in the office, she closed the escrow by issuing Chicago Title's check in the amount of

$20,000 payable to the order of Inland Credit Company and delivering it to Newell. She secured Newell's signature, acknowledging receipt of the check, on the carbon copy of the check to Inland Credit Company.

Jerome Arendt, an escrow officer of Chicago Title, testified that he routinely approved payment of the $20,000 check, but had he been aware that the disbursement (lower) portion was typed in by Mrs. Crumbaugh, he probably would not have authorized the payout as he did.

Both parties agree, and the trial court found, that Newell defrauded plaintiff; *i.e.*, he was not entitled to the $20,000 since he did not secure the loan as he had agreed to do.

Plaintiff claims that Chicago Title breached its fiduciary duty by opening and closing the escrow in the manner described above. According to plaintiff, defendant had warning of impropriety in connection with the escrow by many facts. These facts include that a bank check, rather than the Telex funds called for by the escrow instructions, was deposited and disbursed; that the payout instruction by Newell was oral and directed payment to the Inland Credit Co.; that Chicago Title neither saw nor inquired about the documents referred to in the legend on the check that was deposited; and that the escrow was opened and closed in less than 1 hour.

Chicago Title looks at the issue from a contractual point of view. It claims that the contract between itself and plaintiff was contained entirely in the upper portion of the escrow instructions, and that its sole obligation under that contract was to deliver the escrow deposit only "upon the joint order of the undersigned or their legal representatives and assigns." Claiming that it had secured the signatures of Newell and plaintiff, it denies liability. However, the record is clear that the signature of Newell had not been secured on the authorization.

■■ The relationship of escrowee to depositor has been characterized in various ways. The escrowee has been described as a "trustee" of both the party making the deposit and the party for whose benefit it is made. (*Stark v. Chicago Title & Trust Co.*, 316 Ill.App. 353, 45 N.E.2d 81.) The escrow instructions in the instant case are analogous to the trust agreement. Like a trustee, the escrowee owes a fiduciary duty to act only according to the terms of the escrow instructions. The instructions, prepared and distributed for public use by Chicago Title, by their explicit terms permitted the escrowee to act only upon the joint written direction of Newell and plaintiff. Newell's signature does not appear on the disbursement portion of the escrow instructions. Rather it was secured on the carbon copy of Chicago Title's check for $20,000 under the words "RECEIVED ORIGINAL OF THIS FOR DELIVERY TO

THE PAYEE." The check also bore the statement "payment in full as directed." Since the order directing the disbursement of the funds was never signed by Newell, the Chicago Title's disbursement of plaintiff's $20,000 was a breach of its fiduciary duty.

■■ Alternatively, we may view the escrow instructions as a contract making Chicago Title, the escrowee, a special agent of plaintiff. As such, its powers are limited to the conditions of the deposit. (*Ortman v. Kane,* 389 Ill. 613, 60 N.E.2d 93.) Chicago Title maintains, and we assume *arguendo,* that the only condition needed to authorize disbursement of the deposit was the joint written direction of Newell and plaintiff. Since this condition was not met, Chicago Title exceeded its power under the escrow instructions.

Thus, under either theory the trial court was correct in holding Chicago Title liable for wrongfully disbursing the $20,000. In view of this, Chicago Title cannot be considered an "innocent third party," as it would have us hold. The arguments in its brief that rely on law relating to determining which of two innocent parties must bear the loss occasioned by the wrongful acts of a third party are thus inapposite.

## II.

Plaintiff's appeal is concerned with the damages awarded by the trial court. It seeks a judgment of the entire amount of the escrow ($20,000), plus costs and attorney's fees. In finding for plaintiff, but limiting recovery to $1,500, the trial court stated that a greater recovery "would offend the conscience of this Court." Citing the broad powers that equity courts have historically held, the trial court balanced the breach of duty by Chicago Title against the "colossal negligence and stupidity" of plaintiff and reached the figure of $1,500.

Chicago Title seeks to justify the trial court's decision by quoting the maxim, "Courts of Equity can and should shape remedies to achieve justice under particular facts and circumstances." (*In re Estate of Brown,* 130 Ill.App.2d 514, 523, 264 N.E.2d 287.) This doctrine has been applied to authorize a court of equity to grant relief not sought in the pleadings where the specific relief sought could not be permitted but the evidence supported equitable relief in a manner that was fair to the parties. (*In re Estate of Brown,* 130 Ill.App.2d 514; *Pope v. Speiser,* 7 Ill.2d 231, 130 N.E.2d 507.) These circumstances are not present here. Furthermore, we need not cite authority for the proposition that although a court of equity is vested with great flexibility, its exercise of discretion is subject to review by this court.

■■ There is no doubt that plaintiff was at best exceedingly careless in signing the disbursement portion of the escrow instructions in blank.

Nevertheless, as we have concluded above, Chicago Title was bound to act according to the conditions stated in the upper portion. This it did not do. Its breach of fiduciary duty to plaintiff was not merely the failure to exercise great care and infer the possibility of Newell's wrongdoing from the circumstances surrounding the opening and closing of the escrow. Rather, Chicago Title failed properly to fulfill its duty to plaintiff. Its act exceeded the agency granted to it and may also be considered a breach of trust. In either case, the wrongdoer is liable for the entire amount of the loss occasioned by his act. (*Spalding v. Heideman*, 96 Ill. App. 405; *Piff v. Berresheim*, 405 Ill. 617, 92 N.E.2d 113.) Thus, even though this matter was pleaded as a breach of an escrowee's fiduciary duty, we believe the analogies to a breach of trust and breach of agency contract are so strong that under the circumstances the trial court should have allowed recovery of the entire $20,000 wrongfully disbursed by Chicago Title.

■■ In addition to court costs, which were awarded by the trial court and which award we affirm, plaintiff also seeks in Count IV on allegation of wilful and wanton misconduct, the recovery of attorney's fees, damages and expenses of bringing suit. Although we have held above that Chicago Title acted carelessly we cannot hold that it was guilty of wilful and wanton misconduct so as to warrant the assessment of what would be in the nature of punitive damages.

■■ In addition, in the absence of statute or agreement, attorney's fees and the ordinary expenses and burdens of litigation are not allowable. (*House of Vision, Inc. v. Hiyane*, 42 Ill.2d 45, 245 N.E.2d 468.) Plaintiff has failed to present to the court's attention any statute authorizing attorney's fees and litigation expenses in circumstances such as those in the instant case, and certainly there was no agreement.

Accordingly, we affirm the trial court as to Count IV of the amended complaint and reverse the court as to Count III and remand the cause to the trial court with directions to enter judgment in favor of the plaintiff and against Chicago Title in the sum of $20,000 plus costs and interest at 6% per annum from February 22, 1972.

Affirmed in part; reversed and remanded in part with directions.

DRUCKER and LORENZ, JJ., concur.

## SUPPLEMENTAL OPINION

MR. PRESIDING JUSTICE BARRETT delivered the supplemental opinion of the court on motion for clarification of the court's prior opinion:

■■ Defendant Chicago Title and Trust Company brings this action as a motion for clarification of our opinion rendered in *Toro Petroleum Corp.*

*v. Newell,* 22 Ill.App.3d 542, 317 N.E.2d 658, on August 23, 1974. In that opinion, this court affirmed the trial court's findings entered on February 22, 1972, that Chicago Title, as escrowee, had breached its fiduciary duty to plaintiff by an improper disbursement of funds and that plaintiff was entitled to recover court costs but not attorneys' fees or other litigation expenses. We reversed the trial court's assessment of damages in the amount of $1,500 and remanded "the cause to the trial court with directions to enter judgment in favor of the plaintiff and against Chicago Title in the sum of $20,000 plus costs and interest at 6% per annum from February 22, 1972."

Defendant requests clarification of our opinion with respect to the computation of interest from February 22, 1972, the date when the trial court entered judgment in favor of plaintiff for $1,500, to August 23, 1974, the date when this court reversed the trial court and entered judgment in favor of plaintiff in the sum of $20,000. Defendant contends that statutory interest at 6% per annum[1] accrued on the trial court's initial judgment for $1,500 from the date of its entry on February 22, 1972, until its reversal by this court on August 23, 1974, and on $20,000 at 6% per annum from August 23, 1974, to September 2, 1975, the date of the hearing in the trial court when defendant tendered payment to plaintiff with interest computed as suggested by defendant. Plaintiff contends that interest at 6% per annum accrued on $20,000 from February 22, 1972, the date of the initial trial court judgment, through September 2, 1975. We agree with defendant.

In *People ex rel. Warner Construction Co. v. Chicago Park District,* 291 Ill.App. 205, 9 N.E.2d 433, the court was presented with facts analogous to those in the instant case. Plaintiff, on April 29, 1933, recovered the sum of $42,030.12 against defendant in the trial court. On December 19, 1934, the appellate court raised the amount of the judgment against defendant from $42,030.12 to $43,030.12. Upon defendant's refusal to pay interest on the amount of the judgment in the trial court to the date of judgment in the appellate court, plaintiff filed a petition for writ of *mandamus.* With respect to the computation of interest when an appellate court raises the damages recovered by plaintiff in the trial court, the reviewing court stated:

---

[1] "Judgments recovered before any court or magistrate shall draw interest at the rate of 6% per annum from the date of the same until satisfied. When judgment is entered upon any award, report or verdict, interest shall be computed at the rate aforesaid, from the time when made or rendered to the time of rendering judgment upon the same, and made a part of the judgment. However, that the judgment debtor may by tender of payment of judgment, costs and interest accrued to date of tender, stop the further accrual of interest on such judgment notwithstanding the prosecution of appeal, writ of error, or other steps to reverse, vacate or modify the judgment." Ill. Rev. Stat. 1973, ch. 74, par. 3.

"The judgment of the superior court was entered on April 29, 1933, for $42,030.12, and on this judgment, under the statute, plaintiff is entitled to recover the amount of five per cent interest from the date of its entry to December 19, 1934, the date of the judgment entered here, and interest at the same rate on $43,030.12 from December 19, 1934, until the judgment of this court is paid." (291 Ill.App. 205, 207.)

Application of the *Warner* case to the facts at bar requires this court to conclude that statutory interest be computed at 6% per annum on the trial court's judgment of $1,500 from the date of its entry on February 22, 1972, to August 23, 1974, the date of its reversal by this court, and at 6% per annum on $20,000 from August 23, 1974, to September 2, 1975, the date when defendant tendered payment to plaintiff with interest computed as we have herein directed.

DRUCKER and LORENZ, JJ., concur.