ANTHONY FILOSA *et al.*, Plaintiffs, *v.* CARLOS PECORA *et al.*, Defendants.—
MICHAEL J. LOWY *et al.*, Intervening-Plaintiffs-Appellees, *v.* ANTHONY
FILOSA *et al.*, Defendants.—(FIRST ARLINGTON NATIONAL BANK OF
ARLINGTON HEIGHTS, Impleaded Defendant-Appellant.)

First District (3rd Division)    No. 76-300

Opinion filed December 16, 1976.

Pierce, Daley & Penn, of Chicago, for appellant First Arlington National Bank.

Charles V. Falkenberg, Jr., of Chicago, for appellee Marianna Pecora.

Gordon, Brustin & Schaefer, Ltd., of Chicago (Gilbert W. Gordon, of counsel), for appellees Michael J. Lowy and John A. Canna.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an appeal by First Arlington National Bank (Bank) from an order finding that the Bank was a stakeholder and not entitled to any share of the funds held by it under an escrow agreement, and ordering the Bank to turn over to Marianna Pecora $12,000 plus interest from the escrow funds. Two issues are presented: (1) whether an order entered by the trial court on November 19, 1974, terminated the escrow, and (2) whether the Bank, as a creditor of Lowy and Canna, who are parties to the escrow, had a right of set-off against the funds.

We affirm.

The background of this appeal is summarized from the opinion of this court in an earlier appeal involving another facet of this litigation. *Filosa v. Pecora* (1974), 18 Ill. App. 3d 123, 309 N.E.2d 356.

In August 1971, six neighbors, Anthony Filosa, Angelo Morelli, Willis M. Hoffbeck, Martin D. Galis, Paul Pennick and Joseph Graber, entered into a contract with Carlos Pecora to buy a parcel of unimproved land, approximately 600 feet long and 100 feet wide, which bordered on the rear of their six homes. The contract which was not recorded provided for Pecora to convey the purchased land in separate deeds and that each deed would be contiguous with the lot of each of the six neighbors. In September 1971, Pecora contracted to sell a larger tract of land, including the 600- by 100-foot strip, to two real estate developers, Michael J. Lowy and John A. Canna, who intended to construct several condominium apartment buildings on the property. When Pecora failed to convey the realty they had purchased, Filosa, Morelli, Hoffbeck and Galis sued him for specific performance. Pecora answered the complaint. Lowy and Canna intervened. Pennick and Graber chose not to join in the litigation; instead they conveyed their interests in such properties to intervenors, Lowy and Canna, by quitclaim deed on December 1, 1972.

During the trial on the issues, settlement negotiations were held between the attorney for the plaintiffs and the attorney who represented Pecora, Lowy and Canna. An agreement was reached, and the final

settlement provided that the 600-foot strip of land would be narrowed from 100 to 25 feet and that the four plaintiffs and Pennick and Graber would receive individual deeds for 25 feet behind each of their homes and that the six of them would receive $6000 in damages. The agreement further provided that in the event the intervenors failed to apply for building permits within 120 days after the rezoning of the property was obtained, the 600- by 100-foot strip would pass to the plaintiffs and their two neighbors for their contracted purchase price subject only to current real estate taxes.

On May 9, 1972, an order was entered incorporating the terms of the agreement, referred to here and in the prior appeal as the "consent decree." It was approved for entry by the signatures of the respective attorneys and specifically provided *inter alia*: "IT IS FURTHER ORDERED that this case be dismissed without costs as the matter is settled and compromised between the parties."

On June 8, 1972, Pecora transferred all of his interest in Maywood Proviso Bank and Trust Company Trust No. 3000 to intervenors Lowy and Canna. The trust held legal title to all of the land contracted for by intervenors, including the 600- by 100-foot strip at issue in the prior appeal.

On July 11, 1972, attorneys for Pecora, Lowy and Canna filed a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72) to vacate the order of May 9. The petition was granted and the order was vacated. In the prior appeal to this court, we reversed the order vacating the consent decree, allowing plaintiffs to pursue the remedies stated in that decree. 18 Ill. App. 3d 123.

On February 2, 1973, during the pendency of the prior appeal, intervenors, Canna and Lowy, and Marianna Pecora, as administratrix of her deceased husband's estate, entered into an escrow agreement with the Bank as escrowee. The aforementioned were the only parties to the escrow agreement which provides in pertinent part:

"(5) That MARIANNA PECORA, Individually and as Administratrix of the Estate of CARLO PECORA, Deceased and her two (2) sons, DAN PECORA and Ronald Carlo PECORA, shall receive $12,000.00 less pro-rations on the ultimate disposition of *ANTHONY FILOSA, et. al. vs. CARLO PECORA, et. al.*, under No. 72 CH 461 now pending in the Appellate Court of Illinois under Court No. 58374. Final disposition meaning a Dismissal Order, Settlement Order, Satisfaction, or other final Court Order which cannot be appealed.

\* \* \*

(6) In the event that ANTHONY FILOSA, ANGELO J. MORELLI, WILLIS M. HOFFBECK or MARTIN D. GALIS

and/or/the other Plaintiffs in Case No. 72 CH 461 obtain a verdict of damages against the Estate of CARLO PECORA, said damages shall be deducted from said $12,000.00 and in the event Plaintiffs receive a decree of specific performance no monies shall be received by the Estate of CARLO PECORA, namely, MARIANNA PECORA, DAN PECORA or Ronald Carlo PECORA, and said monies shall be repaid to John A. Canna and Michael J. Lowy."

Subsequent to our decision in the earlier appeal, plaintiffs Filosa, Morelli, Hoffbeck and Galis filed a petition to enforce the consent decree, asking that the land be deeded to them since intervenors Lowy and Canna failed to obtain building permits within the prescribed 120-day period. Meanwhile, Lowy and Canna, and Marianna Pecora, directed the Bank to terminate the escrow and pay the proceeds to Marianna Pecora, which the Bank refused to do.

On November 19, 1974, the trial court entered an order in favor of plaintiffs that defendants and intervenors deed the four parcels of land to plaintiffs as provided in the consent decree and that upon compliance plaintiffs pay $8000 less prorations to defendants and intervenors. The order also gave leave to implead the Bank as a party defendant. The Bank alleges that the funds placed in escrow by intervenors Lowy and Canna were part of the proceeds of its $800,000 loan to intervenors and that upon termination of the escrow the Bank, as lender and creditor, was entitled to set-off the funds held against the matured obligations of the intervenors-debtors.

On April 25, 1975, Marianna Pecora filed a petition alleging that there were two escrows concerning the property, namely $12,000 with the Bank and $8000 with plaintiffs' attorney, and that neither would make payment to her. An order was entered August 7, 1975, that plaintiffs pay intervenors $8000 less prorations by August 14, 1975. Thereafter, on December 2, 1975, an order was entered finding that the Bank was only a stakeholder and not entitled to any share of the escrow funds, and ordering the Bank to turn over to Mrs. Pecora $12,000 plus interest held under the escrow agreement. The appeal is from the December 2 order.

■■■ The depository, or escrowee, under an escrow agreement has been described as both a trustee (*Stark v. Chicago Title & Trust Co.* (1942), 316 Ill. App. 353, 45 N.E.2d 81) and a special agent (*Ortman v. Kane* (1945), 389 Ill. 613, 60 N.E.2d 93). In either instance, the essence of the escrowee's position is that its powers to deal with the subject matter of the escrow are strictly limited to the terms of the escrow deposit. If the conditions of the escrow agreement are fulfilled, the escrowee must deliver the subject matter deposited with him to the grantee or obligee (see *Struve v. Tatge* (1918), 285 Ill. 103, 120 N.E. 549; *Doll v. Walter*

(1940), 305 Ill. App. 188, 27 N.E.2d 231), while if the conditions are unfulfilled, the escrowee must return the subject matter to the depositor (see *Tucker v. Kanatzar* (1940), 373 Ill. 162, 25 N.E.2d 823; *Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 253 N.E.2d 45). The Bank does not dispute these basic tenets, but rather claims that they are inapplicable to the case at bar. The Bank contends that the order of November 19, 1974, operated as a decree for specific performance, thus terminating the escrow under paragraph (6) of the agreement. We disagree.

■■ An escrowee is not the judge of whether the conditions of an escrow agreement have been performed. (*Ortman v. Kane* (1945), 389 Ill. 613, 60 N.E.2d 93; *Hoig v. Adrian College* (1876), 83 Ill. 267.) Thus, in the instant case, it was up to the intervenors to determine whether the $12,000 should go to Mrs. Pecora under paragraph (5), or to themselves under paragraph (6) of the agreement. While it is a settled rule that when a disagreement arises between the parties as to the right of delivery the escrowee is not required to act upon his own responsibility, at his own peril (*Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 253 N.E.2d 45; *Stark v. Chicago Title & Trust Co.* (1942), 316 Ill. App. 353, 45 N.E.2d 81), we find no authority allowing the escrowee to challenge the parties' agreement that the conditions for delivery have been fulfilled. There is no logical basis for allowing such a challenge. Even if the parties are incorrect and delivery should not be made, the escrowee does not act at his own peril. In such instance, the depositor's instructions for delivery amount to a waiver of the conditions of the escrow agreement. *Cf. Brown v. Jurczak* (1947), 397 Ill. 532, 74 N.E.2d 821.

■■ Additionally, we find that the $12,000 in question was in fact due Mrs. Pecora under the conditions of the escrow agreement. On its face, the November 19 order was not for specific performance but, instead, an order for enforcement of the May 9, 1972, consent decree. At the time the escrow agreement was entered, the consent decree had been vacated, which action was then pending on appeal. However, since we thereafter reversed the vacature and reinstated the consent decree, the contingency that plaintiffs receive a decree for specific performance was eliminated, making paragraph (6) of the escrow agreement inoperable.

The Bank argues, however, that the effects of the November 19 order rendered it "tantamount" to an order for specific performance. While the effects may be the same in that the four plaintiffs each received the parcels for which each had originally contracted, title was obtained through enforcement of the consent decree which expressly provided that it was a settlement and compromise of the parties. While it was foreseeable that the consent decree might be reinstated in the prior appeal, the parties to the escrow agreement did not provide that paragraph (6) would also be

operative upon enforcement of the consent decree. Instead the November 19 order falls within the provisions of paragraph (5) that $12,000 be paid to Mrs. Pecora upon final disposition of the case then pending on appeal, specifically to include an order of dismissal, settlement, satisfaction or other final order which cannot be appealed.

■■ Furthermore, assuming *arguendo* the issuance of a specific performance decree, the funds held pursuant to paragraphs (5) and (6) remained subject to the agreement until returned to intervenors. Where money is deposited in escrow in pursuit of a contract, and no enforceable contract is reached, the escrowee must return the money to the buyer or depositor. (See *Hilyard v. Krisolofsky* (1929), 337 Ill. 584, 169 N.E. 765; . *Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 253 N.E.2d 45.) An escrow deposit of money with a bank is in the nature of a special deposit; one in which the bank becomes a trustee for the depositor by special agreement. (*Baiar v. O'Connell* (1936), 365 Ill. 208, 6 N.E.2d 140; *Mid-City National Bank v. Mar Building Corp.* (1975), 33 Ill. App. 3d 1083, 339 N.E.2d 497.) It is well-settled that such special deposits may not be retained by the bank for the payment of a general balance or for the payment of other claims. (See *American Exchange National Bank v. Loretta Gold & Silver Mining Co.* (1896), 165 Ill. 103, 46 N.E. 202; *Mid-City National Bank v. Mar Building Corp.; Whitewater Commercial & Savings Bank v. United States Bank* (1922), 224 Ill. App. 26.) The bank owes the duty of returning the identical thing or money deposited. *Mid-City National Bank v. Mar Building Corp.*

■■ The Bank concedes that it has no right of set-off against funds in a special deposit but claims, however, that the $12,000 became a general deposit when the escrow was terminated. However, as we have concluded the money did not lose its status as escrow funds, and thus as a special deposit, until it was disbursed or returned in fulfillment of the escrowee's duty. Until then, the escrow is not terminated. While remaining in the Bank's control, the money continues as a special deposit and therefore is not subject to a set-off on an unrelated claim.

■■ The Bank's argument that the instant case is analogous to a moneylender's escrow is not persuasive. The loan agreement between the Bank and the intervenors on which the Bank predicates its set-off was separate and not a part of the escrow negotiations and arrangements between Mrs. Pecora and the intervenors. The Bank's role as moneylender had no necessary or contractual connection to any of the escrow-related negotiations or agreements. (*Cf. Chicago Title & Trust Co. v. Walsh* (1975), 34 Ill. App. 3d 458, 340 N.E.2d 106.) The disposition of escrow property is governed by the terms of the escrow agreement. Unless the agreement specifically provides that the escrow funds be returned to the moneylender, such funds will be returned to the

depositors. In the case at bar, no moneylender's provision was included. The Bank's sole role was that of escrowee, and the intervenors were the depositors. Therefore the Bank's claim to a right of set-off must fail.

For the foregoing reasons the order of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA, P. J., and McGLOON, J., concur.