DAVID BAUM *et al.*, Plaintiffs-Appellants, *v.* SIDNEY SOSIN *et al.*, Defendants-Appellees.

First District (Second Division)　No. 76-176

Opinion filed June 20, 1978.

Haft, Shapiro & Haft, of Chicago (Morris A. Haft, of counsel), for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., and Arvey, Hodes, Costello & Burman, both of Chicago (Richard C. Clark, James T. Ferrini, and George L. Siegel, of counsel), for appellees.

Mr. JUSTICE BROWN delivered the opinion of the court:

Plaintiffs, 46 stock subscribers of Burton's In The Round, Inc. (hereinafter Burton's), filed a breach of contract action in the circuit court of Cook County against the defendant escrowees, who had held funds of Burton's for distribution to rescinding stock subscribers pursuant to an escrow agreement, as amended. The breach of contract action was filed against defendants after the entry of a final decree by the U.S. District Court (N.D. Ill., E.D.) in Burton's reorganization proceedings under Chapter 10 of the Bankruptcy Act. (11 U.S.C. §501 *et seq.* (1976).) Plaintiffs appeal from the circuit court's order granting defendants' motion for summary judgment. The issues presented for our review are whether the plaintiffs' action is barred by the terms of the United States District Court's final decree and whether its adjudication is *res judicata* as to the plaintiffs' action. The pertinent facts follow.

On January 31, 1969, Burton's received notice from the Secretary of State of Illinois that prior sales of its shares of common stock were made in violation of the Illinois Securities Law of 1953. (Ill. Rev. Stat. 1953, ch. 121½, par. 137.12A, 137.12B, 137.12F.) Burton's also received notice from the Chicago Office of the Securities and Exchange Commission that prior sales of its shares of common stock may have been made in violation of the Federal Securities Act of 1933. (15 U.S.C. §77a *et seq.*) On February 8, 1969, Burton's, acting pursuant to section 13 of the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1969, ch. 121½, par. 137.13), sent by registered mail a written offer of rescission to all subscribers of its shares of common stock. As per section 13, this offer to repurchase informed the subscribers that it was for the full amount paid for the securities plus interest thereon; that it was valid for 15 days after receipt of the letter; and that failure to accept in writing within 15 days would extinguish the subscriber's rights under the Illinois Securities Law of 1953.

On May 19, 1969, Burton's and the defendants executed a written escrow agreement, whereby the defendants, as escrowees, would deposit $545,779.88 of uncashed subscription checks into a bank account and purchase United States Treasury Bills with the proceeds therefrom. The agreement did not permit refunds except pursuant to an effective registration statement under the Federal Securities Act of 1933. The agreement provided that the escrowees shall first pay all rescinding shareholders whose checks have been endorsed to and cashed by the escrowees and then pay all other rescinding shareholders $1 per share plus

5% interest, any surplus to be returned to Burton's upon the expiration of the period of rescission set forth in the registration statement. The June 6, 1969, amendment to the escrow agreement provided that the escrowees could pay any rescinding shareholder prior to the effective date of the registration statement, but only to those shareholders whose checks had been endorsed to and cashed by the escrowees. The amendment further provided for a pro rata distribution to rescinding shareholders if the escrow funds were insufficient to pay $1 per share plus 5% interest. Both the agreement and the amendment thereto required a written request for a refund. Defendants refunded $98,500 plus interest from the escrow account at the Northern Trust Company prior to January 5, 1970, the effective date of the registration statement. A prospectus dated January 5, 1970, was mailed to the subscribers of common stock and it stated that the rescission offer was to expire on January 26, 1970.

On March 24, 1970, a petition for reorganization under Chapter 10 of the Bankruptcy Act (11 U.S.C. §501 *et seq.*) was filed against Burton's in the United States District Court (N.D. Ill., E.D.) by three creditors and a trustee was appointed. On that date, defendants held $440,186.91 in the Northern Trust escrow account. The three creditors and the trustee filed separate petitions requesting that the funds in the escrow account be turned over to the trustee. Hearing on the petitions was set for May 25, 1970. The trustee gave written notice and notice by publication of the petitions and hearing to creditors and shareholders. On May 25, 1970, the United States District Court entered an order which directed the defendants and the Northern Trust Company to turn over all funds in the Northern Trust escrow account. The order further provided: that the turn over would not constitute a breach of the defendants' fiduciary duty or obligation under the escrow agreement and amendment thereto; that the defendants would have no liability with respect to any future disbursement of all or any part of the funds turned over; which reserved for futher evidence the question whether the funds turned over constituted an asset of Burton's; and that the turn over would not prejudice any right of any party in interest to contend that he has ownership of, a right to return or refund of, a security interest in, a priority claim against, and /or a right to prior payment of all or any part of the funds turned over.

In September 1971, the trustee filed a proposed plan of reorganization. Although the plan of reorganization is not part of the record, the pleadings and exhibits thereto reveal that the plan provided that escrow rescinding shareholders would receive 30% in cash of the subscription price paid plus approximately 5% interest thereon.

On October 7, 1971, "Objections to Trustee's Plan of Reorganization" were filed on behalf of the 46 shareholders who are plaintiffs in the instant

case. The objections alleged that they had rescinded pursuant to the February 8, 1969, 15-day rescission offer of Burton's; that the escrowees induced them to withhold their demand for immediate repayment; that approximately $100,000 had been paid out of the Northern Trust escrow account to "rescinding shareholders"; that the escrowees ceased making refunds without cause or reason; that the turn over order was entered over their objection; that they are third-party beneficiaries of the agreements made by Burton's and the escrowees and that the trustee is required to carry out those agreements; and that they are entitled to 100% of their paid subscriptions plus interest thereon. On November 11, 1971, the objectors (the plaintiffs in the instant case) withdrew the objections. On November 17, 1971, the United States District Court entered an order expunging the objections from its record.

On or about December 28, 1973, the United States District Court entered a final decree which approved the final report of the trustee; which discharged Burton's from all debts and liabilities and terminated all rights and interests of its stockholders; which directed the trustee to turn over to the Clerk of the United States District Court the sum of $4,443.82, to be paid by the Clerk to the persons entitled thereto upon proper application within 5 years after the entry of the final decree, after which no claim or stock interest shall participate in distribution under the plan; which ordered that the securities or cash remaining after expiration of the five-year period shall be deposited and withdrawn pursuant to 28 U.S.C. §2042; which ordered the trustee discharged upon payment of $4,443.82 and $712.93 to the Clerk; which held that the estate of Burton's is closed; and which stated as follows:

> "That all creditors of, claimants against, stockholders of and persons having or claiming interests of any nature whatsoever in the property and assets of the said debtor, wheresoever situated or domiciled, be, and they hereby are, perpetually enjoined and stayed from pursuing or attempting to pursue or commence any suits or proceedings at law, in equity or otherwise, against the said debtor or its property or against any nominee, assignee or grantee of said debtor, or against any person or persons, corporation or corporations, claiming by, under or through it, directly or indirectly, on account of or based upon any right, claim or interest which any such creditor, claimant, stockholder or other person may have had at the date of the filing of the petition of the said debtor herein under Chapter X of the Bankruptcy Act in, to or against the said debtor or against its property and assets, except with respect to claims, rights or interests arising out of the said plan or the orders of this court."

On or about April 15, 1974, the plaintiffs filed the instant breach of

contract action in the circuit court. The complaint alleges that each plaintiff paid the subscription price of one dollar per share; that the defendant escrowees paid out approximately $100,000 plus interest at 5% to persons who had demanded in writing repayment of amounts which they had delivered to Burton's for common stock; that the plaintiffs made demands for rescissions of their subscription within apt time; that defendants wrongfully refused to repay plaintiffs in violation of the escrow agreement; that defendants did not perform their duties and obligations under the escrow contract; and that plaintiffs have received part payment of their subscriptions and are due the sum of $30,660 plus interest thereon.

The defendants' answer raised the following as affirmative defenses: (1) that the final order in the bankruptcy proceeding bars the plaintiff stockholders as the defendants were "nominees, assignees and grantees" of Burton's; (2) that the plaintiffs' claims are barred since plaintiffs withdrew their objections to the trustee's plan and accepted and received their pro rata share of the distribution in the bankruptcy proceeding; (3) that the defendants never received any written requests for rescission from plaintiffs under the escrow agreement and amendment thereto; (4) that the plaintiffs are barred since they failed to rescind within 15 days under the February 8, 1969, written offer of rescission, sent pursuant to the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1969, ch. 121½, par. 137.13); (5) that the defendants have no liability to plaintiffs under the May 25, 1970, turn over order; (6) that the plaintiffs are barred from failure to give written notice of their election to declare the sale of stock voidable and for failure to commence the action within three years under the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1969, ch. 121½, par. 137.13); and (7) that the plaintiffs are barred for failure to commence the action within three years under section 13 of the Federal Securities Act of 1933 (15 U.S.C. §77m).

In their motion for summary judgment, the defendants repeat the foregoing defenses raised in their answer. After the filing of plaintiffs' replies to defendants' affirmative defenses and statement of facts, defendants' reply brief, and plaintiffs' affidavits, the circuit court granted defendants' motion for summary judgment.

We turn now to the issues presented in the instant appeal.

■■ The United States District Court's final order provided that stockholders of Burton's are perpeturally enjoined and stayed from commencing any suits against "* * *" any nominee, assignee or grantee* * *" of Burton's based upon any claim any stockholder may have had at the date of the filing of the petition of Burton's under Chapter 10 of the Bankruptcy Act, except claims arising out of the plan or the orders of the United States District Court. If the defendant escrowees

were nominees, assigness or grantees of Burton's, then the plaintiffs' instant action is barred by the terms of the United States District Court's final decree. "The words nominee ordinarily indicates one designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee. It has no connotation, however, other than that of acting for another, in representation of another, or as the grantee of another." *Schuh Trading Co. v. Commissioner of Internal Revenue* (7th Cir. 1938), 95 F.2d 404, 411.

■■ "The depository, or escrowee, under an escrow agreement has been described as both a trustee (*Stark v. Chicago Title & Trust Co.* (1942), 316 Ill. App. 353, 45 N.E.2d 81) and a special agent (*Ortman v. Kane* (1945), 389 Ill. 613, 60 N.E.2d 93)." (*Filosa v. Pecora* (1st Dist. 1976), 44 Ill. App. 3d 912, 915, 358 N.E.2d 1213; see also *Toro Petroleum Corp. v. Newell* (1st Dist. 1974), 33 Ill. App. 3d 223, 229, 338 N.E.2d 491.) In the case at bar, the facts and circumstances surrounding the escrow support the conclusion that the defendant escrowees were acting as special agents of the party making the deposit (Burton's), and not the party for whose benefit the deposit was made (plaintiffs). The defendant Miller, as counsel for Burton's, apparently advised Burton's to send the February 8, 1969, rescission offer pursuant to section 13 of the Illinois Securities Law (Ill. Rev. Stat. 1969, ch, 121½, par. 137.13). The defendant Sosin was then engaged as special counsel, and the principal directors and officers of Burton's thereafter chose to transfer the uncashed subscription checks Burton's had received to an escrow, with Burton's counsel, defendants Sosin and Miller, to act as escrowees. The plaintiffs were not parties to the escrow agreement and amendment thereto. The record does not reveal what knowledge each plaintiff had regarding the execution of the escrow agreement and amendment thereto. Plaintiff Schlossberg's affidavit indicates that he did not know of the existence of the escrow agreement until after its execution and that permission to amend was not sought from any plaintiff prior to the amendment of the escrow agreement. In plaintiffs' reply to defendants' motion for summary judgment, they allege that the defendants did not consult with any subscribers of shares as to the name under which the escrow account was to be carried and that the defendants took it upon themselves to label the account:

"NORMAN A. MILLER and SIDNEY SOSIN, as Escrowees for Burton's In the Round, Inc.

720879"

■■ From the foregoing, we conclude as a matter of law that the defendant escrowees were special agents and nominees of Burton's, and that the plaintiffs' instant action is barred by the terms of the United States District Court's final decree.

■■ The defense of *res judicata* of a Federal court ruling can be raised in a defendant's motion for summary judgment. *Hardy v. Bankers Life & Casualty Co.* (1st Dist. 1958), 19 Ill. App. 2d 75, 153 N.E.2d 269, *appeal denied* (1958), 14 Ill. 2d 632.

> "* * * whether the [final] decree * * * was erroneous is wholly immaterial here, for that decree remains in full force and effect, there having been no appeal or review of any character. Both former section 77B of the Bankruptcy Act and Clause (1) of Section 224 of Chapter X of the Bankruptcy Act, Section 624(1), Title 11 U.S.C.A. provide that upon confirmation, the plan shall be binding upon the creditors, debtor and stockholders. Such an order is res judicata not only of all questions decided but of all questions that might have been raised at the time it was entered. Prudence Realization Corp. v. Ferris, 323 U.S. 650 at page 655, 65 S. Ct. 539, 89 L. Ed. 528. Obviously, therefore, after confirmation of the plan and a final decree, they are not open to collateral attack. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371 at page 377, 60 S. Ct. 317, 84 L. Ed. 329, even though the judgment may have been erroneous. Stoll v. Gottlieb, 305 U.S. 165 at page 172, 59 S. Ct. 134, 83 L. Ed. 104." *In re Union League Club* (7th Cir. 1953), 203 F.2d 381, 386; see *Double X Ranch, Inc. v. Savage Brothers* (1975), 167 Mont. 231, 536 P. 2d 1176, 1179.

■■ The plaintiffs in the case at bar did not appeal from the United States District Court's final decree. Furthermore, they assented to the plan of reorganization by withdrawing their objections to the plan and by participating in the distribution under the plan. We note that their objections to the plan sought the same relief as sought in their action filed in the circuit court. The plaintiffs could have pursued their objections in the United States Court; they voluntarily chose not to do so. They cannot now be heard to complain that they have not had their day in court. Under *In re Union League Club* and cases cited therein, we hold that the United States District Court's adjudication is *res judicata* as to the action filed in the circuit court.

For the reasons hereinbefore stated, the order of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and DOWNING, J., concur.