John Franks and Genevieve Franks, Plaintiffs-Appellants,
v. North Shore Farms, Inc., and Howard A. McKee,
Defendants-Appellees.

Gen. No. 52,993.

First District.

September 22, 1969.

59

Jurco, Damisch & Sinson, of Chicago (James R. Mitchell and John W. Damisch, of counsel), for appellants.

Marvin J. Glink, Ronald M. Glink, and Crowley, Sprecher, Barrett & Karaba, of Chicago (Robert A. Sprecher and Frank A. Karaba, of counsel), for appellees.

RYAN, J.

The plaintiffs entered into a contract to purchase certain real estate from the defendant-seller, North Shore Farms, Inc. (North Shore). Fifteen Thousand Dollars as earnest money was deposited with the defendant, Howard A. McKee (McKee). The plaintiffs' Complaint was filed December 5, 1962, and prayed judgment against defendant, North Shore, and defendant, McKee, in the amount of the earnest money, plus interest and costs. On April 30, 1963, defendant, McKee, filed a Counterclaim for Interpleader in which he alleged that he was holding the earnest money for the benefit of both parties to the real estate contract and that both the plaintiffs and the defendant, North Shore, had claimed the earnest money. He also alleged that George H. Carlson and Happ Realty, Inc. were real estate agents who likewise claimed to be entitled to a commission payable out of the earnest money. McKee then asked that he be permitted to pay the money into court and that he be discharged from any and all claims with regard to the earnest money. The court, pursuant to this prayer on November 4, 1963, ordered defendant, McKee, to deposit the earnest money less costs of $18.30 with the Clerk of the Court, subject

61

to further order of the court and dismissed defendant, McKee, from the case. Thereafter, with leave of court, plaintiffs filed an Amended Complaint and still later a Second Amended Complaint, which contained four counts. Count I charged the defendant, North Shore, with the failure to perform under the contract and prayed for a judgment against North Shore in the amount of the earnest money, plus interest and costs. Count II alleged a conspiracy between the defendant, North Shore, and the defendant, McKee, and asked for a judgment against both defendants in the amount of the earnest money, plus interest and costs. Count III charged the defendant, McKee, with the violation of his fiduciary duties and a refusal to return the earnest money, and prayed for judgment against McKee in the amount of the earnest money, plus interest and costs, and for punitive damages. Count IV charged North Shore and McKee with conspiracy and prayed for punitive damages against both defendants. On motion of McKee, the court dismissed him from the case. The court also granted North Shore's motion to strike Counts II and IV and granted leave to the plaintiffs to file a Third Amended Complaint as to North Shore. The Third Amended Complaint was never filed. The case went to trial before a jury on Count I of the plaintiffs' complaint which prayed for judgment against North Shore in the amount of earnest money, plus interest and costs. The jury returned a verdict in favor of the plaintiff and against North Shore. At the close of all the evidence, North Shore filed a motion for a directed verdict. The court reserved its ruling on this motion. After the verdict, defendant, North Shore, filed its Post-Trial Motion asking: (1) for a judgment for the defendant, notwithstanding the verdict of the jury, "in accordance with defendant's motion for a directed verdict," and (2) in the alternative for a new trial. The trial court granted the defendant's motion for judgment notwithstanding the verdict and entered judgment for the

defendant, but did not rule on the defendant's motion for a new trial, though requested to do so at the hearing thereon.

The plaintiffs have appealed from the order of the court granting defendant, North Shore's motion for a judgment notwithstanding the verdict and also from the order of the court dismissing the case against defendant, McKee, under Counts II and III.

We shall first consider the correctness of the court's dismissal of the case against defendant, McKee, under Counts II and III of the Second Amended Complaint.

■ ■ Money deposited to be held until the performance of a condition has been treated as a deposit in escrow, although this concept is contrary to the generally accepted or common-law meaning of the term. 30A CJS, 971. In this case, McKee was a stakeholder, depositary, or escrowee having custody of funds belonging to the plaintiffs. Title of the plaintiff to these funds would be divested upon defendant, North Shore, performing under the terms of the contract. McKee held the money for the mutual benefit of both parties. Upon the failure of defendant, North Shore, to perform, plaintiffs had the right to the return of the money. Should the escrowee, McKee, fail to return the same, he became a necessary party to any action by the plaintiffs to recover the deposit. Had there been no conflicting claims to the money deposited, then McKee would have been the only necessary party-defendant. However, where there are conflicting claims to the deposited fund by the parties to the contract, in an action by one party against the escrowee for the recovery of the deposited fund, the other party to the contract is a necessary party to the litigation. Hilyard v. Krisolofsky, 337 Ill 584, 169 NE 765.

■ The original Complaint sought only the recovery of the earnest money and named both North Shore and McKee party-defendants. The defendant, McKee, then filed a Counterclaim for Interpleader pursuant to the pro-

visions of section 26.2 of the Civil Practice Act, alleging the conflicting claims of the plaintiffs and the defendant, North Shore. On November 4, 1963, the court, acting on this motion, authorized the defendant, McKee, to deposit the fund he held with the Clerk of the court and dismissed him from the case. McKee by the counterclaim admitted he had no claim to the fund. He, therefore, should be permitted to bring the money into court and go free, leaving the rival claimants to settle their contest in a proceeding wherein a final judgment will be a termination of the controversy between all parties. Platte Valley State Bank v. National Live Stock Bank, 155 Ill 250, 40 NE 621. The order of November 4, 1963, disposed of the defendant, McKee, as to any claim by the plaintiffs for the return of the earnest money and he was properly dismissed from the case.

■■ When there are conflicting claims to the deposited fund, the escrowee is not required to act upon his own responsibility in making a determination as to the rights of the rival claimants. Stark v. Chicago Title & Trust Co., 316 Ill App 353, 45 NE2d 81. If the escrowee were to prefer one claimant over the other without the protection of a court order, he would be acting at his peril. Nathan v. Rehkopf, 57 Ill App 212.

Count II of the Second Amended Complaint, although containing general allegations of conspiracy and wrongdoing by both McKee and North Shore, nonetheless, seeks to recover only the earnest money that had been deposited with McKee. The order on the counterlcaim for interpleader which had previously been entered disposed of that issue as to the defendant, McKee, and the court accordingly properly dismissed Count II as to McKee.

■■ ■■ Count III of the Second Amended Complaint appears to be an attempt to allege a cause of action sounding in tort based on McKee's willful and malicious violations of his duties as escrowee and seeks to re-

cover judgment against McKee (and North Shore) in the amount of the earnest money and also seeks to recover punitive damages from McKee. Count III was properly dismissed for two reasons: First, it again seeks to recover from McKee the $15,000 he had previously deposited with the court pursuant to the order of November 4, 1963, and second, this count though sounding in tort, fails to allege any damage to the plaintiffs which resulted from the alleged wrongful acts of the defendant, McKee. A legal injury is a wrongful act resulting in damages. As a general rule, to constitute a valid cause of action, there must be both injury and damages. An action cannot be maintained for an injury without damage.

Injuria absque damno does not constitute a cause of action, 1 Am Jur2d, 597, 598; Kane v. Nomad Mobile Homes, Inc., 84 Ill App2d 17, 228 NE2d 207. Accordingly, the court properly dismissed Counts II and III of the Second Amended Complaint as to the defendant, McKee.

In considering the propriety of the order of the court entering judgment for the defendant, North Shore, on defendant's post-trial motion notwithstanding the verdict for the plaintiffs, we must examine the evidence.

Under the terms of the contract which was entered into July 26, 1962, the plaintiffs agreed to buy and the defendant, North Shore, agreed to sell approximately 10 acres of real estate located in the Northwest portion of Cook County, Illinois. The property was to be used by the plaintiffs as a riding academy. The contract provided:

> "Within sixty days from the date hereof seller shall deliver to purchaser or his agent (which delivery may be made at the office of the Buyers' attorney) a title insurance policy of the Chicago Title and Trust Company in the amount of the purchase price covering the date hereof, or its customary preliminary report on title, showing title in seller

(or grantor), subject only to the matters to which this sale is subject by the terms hereof, and to the usual objections contained in owners' policies issued by said Company. . . .

"It is agreed and understood that the buyer is purchasing the subject property for use as a private riding club and stable for training and boarding horses. Seller represents that the present zoning on said property is agricultural even though said property has been used for some 20 years for commercial purposes by seller. This contract is subject to seller obtaining zoning for buyer that would be suitable for buyer's use as outlined above. Time being of the essence, it is agreed by the Parties that rezoning order necessary for the buyer's business must be obtained on or before October 15, 1962. Failure by the Seller so to do shall render the contract null and void and the earnest money deposit shall be returned to the Buyer."

■ The plaintiffs' Second Amended Complaint alleged as breaches of the contract North Shore's failure to procure the title insurance policy and the failure to procure the change in zoning within the time limits prescribed in the contract. Defendant, North Shore, in its answer alleged facts constituting a waiver of the performance of the two requirements within the time limits. Plaintiffs filed no reply denying the affirmative allegations of the answer. The defendant, North Shore, now contends that the affirmative allegations of waiver stand admitted by virtue of sections 32 and 40(2) of the Civil Practice Act. Without holding that the affirmative allegations involved required a denial, we are of the opinion that the defendant, North Shore, is not in a position to rely upon plaintiffs' failure to reply to these allegations. The theory upon which North Shore defended the action was waiver by the plaintiffs of the contract requirements. North

Shore introduced considerable evidence to prove waiver. It offered instructions on waiver and it argued waiver to the jury. The defendant thereby abandoned its position that the affirmative allegations of the answer stand admitted by the plaintiffs' failure to deny the same. Laegeler v. Bartlett, 10 Ill2d 478, 140 NE2d 702; Sottiaux v. Bean, 408 Ill 25, 95 NE2d 899.

The defendant, in an attempt to prove waiver of the contract provisions relating to the furnishing of a title insurance policy, relied upon the acts, words, and conduct of the plaintiffs and their attorney. The defendant contends that the plaintiff treated the contract as still being in effect even after the expiration of the 60-day period and led the defendant to believe that this requirement would not be insisted upon. The defendant contends that the plaintiffs thereby waived performance of this part of the contract. The conduct relied upon by the defendant is the same conduct which it claims constituted waiver of the contract requirement to procure a change in zoning of the property within the time specified. The discussion hereinafter contained concerning the waiver of that contract provision relates to the waiver of the contract provision now under consideration and what is hereinafter said on the subject of waiver relates to both of these contractual provisions.

It stands admitted that a change in the zoning ordinance of the property was not obtained by October 15, 1962, but was obtained in March of 1963. Although the contract recited that the seller represented that the property was zoned agricultural, it was actually zoned R-3 (residential). In any event, the zoning was such as would not permit an operation such as the plaintiffs proposed to pursue on the property except as a nonconforming use.

The defendant, North Shore, contends that the failure to obtain the change in zoning by October 15, 1962, did not constitute a breach of contract. It insists that the

contract does not spell out that the property had to be rezoned to any particular classification. It insists that what the parties intended was that the zoning be consistent with the buyer's proposed use of the property. North Shore had for many years operated stables, boarded horses, and given riding instructions on the property in question and had been permitted to do so under the existing zoning (R–3) as a nonconforming use. North Shore procured an opinion from the Cook County zoning administrator subsequent to the execution of the contract to the effect that such an operation could continue on the property, even though there was a change in ownership. North Shore therefore concludes that the existing zoning was consistent with the plaintiffs' proposed operation; that rezoning was not necessary and that the defendants' failure to procure a change in zoning by October 15, 1962, did not constitute a breach of contract. The plaintiff, John Franks, testified that at the time he negotiated for the purchase of this property, he was already operating a riding stable at another location under a nonconforming use. He did not want to continue to operate under a nonconforming use because of the restrictions he would be under concerning erection of buildings and making improvements. He told this to the defendant's representative with whom he was negotiating before the contract was executed. He also told him he would not take the property as a nonconforming user, but he wanted it rezoned. The letter of opinion from the Cook County Zoning Administrator, in addition to stating that the present nonconforming use could continue on the property even though there was a change in ownership, also stated that approval for structural changes or enlargement of existing buildings may not be given until the requested change of zone has been approved by the County Board.

 Where the language used in a contract leaves the true intent of the parties in doubt and it is necessary to

receive extrinsic evidence of facts and circumstances to determine the intent of the parties and if such extrinsic facts and circumstances are controverted, then the jury must determine the question of fact. Schneider v. Neubert, 308 Ill 40, 139 NE 84. In the case now before the court, the jury heard the evidence with regard to the intention of the parties and obviously rejected defendant's contention that it was not necessary to procure a rezoning of the property and that the existing zoning complied with the contract requirements.

■ In the alternative, North Shore argues that if completion of the zoning proceeding by October 15, 1962, was material, then the plaintiffs by their words and conduct had waived the contract requirement and the subsequent notification on October 17 that plaintiffs considered the contract terminated constituted an anticipatory breach. The defendants were thereby entitled to retain the earnest money as liquidated damages. Since by this plea defendant, North Shore, is relying upon the defense of waiver to excuse its noncompliance with the terms of the contract, the burden of establishing the waiver is upon the defendant. Voris v. McIver, 339 Ill 340, 171 NE 263; Selman v. Geary, 334 Ill 642, 166 NE 455; Rockwood Sprinkler Co. v. Phillips Co., 265 Ill App 267; 12 Ill Law and Practice, Contracts, § 459; 18 Ill Law and Practice, Estoppel, § 36.

Much of the evidence bearing on the question of waiver is essentially uncontroverted. After the contract was signed in July there were several conversations between plaintiff, John Franks, and Schmidt, an agent for defendant. Schmidt urged Franks to move his horses onto the property, but Franks refused to do so until the zoning proceedings had been completed. Franks left for Canada on October 5. Before he left, he instructed his attorney, Jurco, to prepare a letter cancelling the contract and demanding his money back and if they did not receive the rezoning by October 15, then he should mail

the letter. On September 19 the zoning Board sent out notice of the hearing on the application for rezoning. The hearing date was set for October 17, 1962, two days after the time specified in the contract for the completion of the rezoning proceedings. Murphy, attorney for defendant, North Shore, told Jurco, attorney for Franks, that the rezoning could not be accomplished by October 15. Murphy asked Jurco to ask Franks to take possession of the property without waiting for the rezoning. Jurco refused. Murphy then suggested that the parties enter into a lease with an option to purchase. Again Jurco refused. On October 10 the two attorneys again discussed the rezoning hearing date and Jurco told Murphy that the contract called for October 15, 1962, and whatever Murphy wanted to do was purely a matter that he, himself, would be responsible for. On October 15, 1962, Jurco addressed a letter to McKee, the escrowee, stating that his client, Franks, would be willing to extend the time provision of the contract to December 5, 1962. No reply to this letter was received.

The hearing was held on October 17, 1962. Neither Franks nor Jurco appeared at the hearing, but Mrs. Franks attended the hearing but did not testify. At the hearing Murphy explained to Mrs. Franks that the objections had been withdrawn to the application and Mrs. Franks was apparently quite happy about it.

There was conflict in some of the evidence presented by the parties on the question of waiver. Attorney Jurco testified that he first received notice of the October 17 hearing on October 12, however, Attorney Murphy testified that he had received notice of the hearing date about September 18 and had immediately informed Jurco of the hearing date. There was also a dispute as to the substance of several telephone conversations between the two attorneys.

■ This conflicting evidence plus the various inferences that may be drawn from the evidence not in

dispute created questions of fact for the determination of the jury on the issue of breach of contract and on the defense of waiver. The jury was instructed as to the burden of proof of each of these issues and as to the law pertaining thereto. By its verdict it obviously found from the evidence and under the instructions that there had been a breach of the contract and that there had not been a waiver of the performance of the conditions thereof. We think there is substantial evidence to support the verdict on these issues as well as on the question of whether the contract required the property to be rezoned as above discussed. It cannot be said that the evidence when viewed in its aspect most favorable to the plaintiffs so overwhelmingly favored the defendant that a contrary verdict on that evidence cannot stand. Consequently, the order of the trial court setting aside the verdict for the plaintiffs and entering judgment for defendant was improper. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504.

Following the oral argument on the defendant's post-trial motion the court made the following statement:

"I think the verdict was against the manifest weight of the evidence. Coupled with the remarks which you have made, it can't stand. The motion, therefore, made for a directed verdict at the close of all the evidence will be allowed. There will be no judgment against the defendant for the plaintiff."

The remarks the court referred to were remarks which counsel for the plaintiff made in his closing arguments and which the judge viewed as inflammatory.

The reason stated by the court does not support its order. Our Supreme Court in the Pedrick case, supra, at page 513 stated:

"We have rather carefully preserved the distinction between the evidentiary situation which will require a

71

new trial, verdict against the manifest weight of the evidence . . . , and that justifying direction of a verdict or judgment n. o. v. There is, in our judgment, excellent reason for so differentiating to be found in the radically different results of allowance of the two motions, and we believe a more nearly conclusive evidentiary situation ought to be required before a verdict is directed than is necessary to justify a new trial. It is not our intention by this opinion to alter this concept."

It appears, therefore, that the reasons stated by the trial court, inflammatory remarks by counsel and the verdict against the manifest weight of the evidence, were reasons which if present would conceivably support the granting of a new trial but would not support the directing of a verdict or the granting of a judgment notwithstanding the verdict.

The defendant's post-trial motion in addition to asking for the relief granted, in the alternative asked for a new trial. The trial court refused to pass on the motion for a new trial although specifically requested to do so by the defendant. Defendant, North Shore, now requests this court to grant it a new trial in the event we set aside the trial court's order which entered judgment in its favor. The question arises as to this court's authority to consider the defendant's alternative motion for a new trial in view of the fact that it had not been passed upon by the trial court.

In an attempt to eliminate successive appeals on the questions presented by post-trial motions, the Civil Practice Act of 1933, § 68, subsections 3(b) and 3(c) authorized the reviewing court after reversing the trial court's ruling on a Motion for Judgment Notwithstanding the Verdict to grant a new trial if one was warranted, even though the motion for a new trial was not passed

upon by the trial court. In Goodrich v. Sprague, 376 Ill 80, 32 NE2d 897, the Supreme Court held that section 68, paragraph 3(c) of the Civil Practice Act was an unconstitutional attempt to confer original jurisdiction on the Appellate Court. The only jurisdiction the General Assembly could confer on an Appellate Court under section 11 of Article VI of the Illinois Constitution 1870 as it then existed was appellate jurisdiction. Since the trial court had not passed on the alternative motion for a new trial, the Appellate Court in passing on the same, was exercising original jurisdiction which under the Judicial Article of the constitution then in existence it had no authority to do.

Following this decision and others to the same effect, the Supreme Court amended former Supreme Court Rule 22. Under the amendment the party moving for a judgment notwithstanding verdict was required to move at the same time and in the alternative for the new trial. The trial court was also required to pass on the alternative motion for a new trial even though it granted the Motion for Judgment notwithstanding the verdict. The conditional ruling then served as a basis for the exercise by a reviewing court of its appellate jurisdiction in the event it determined that the judgment notwithstanding the verdict should not have been granted. The provisions of this amendment to former Supreme Court Rule 22 have been incorporated in subsection (6) of section 68.1 of the Civil Practice Act (Ill Rev Stats 1967, c 110, par 68.1(6)).

Under the new judicial article of our constitution effective January 1, 1964, the Appellate Court is no longer prohibited from exercising original jurisdiction. Section 7 thereof provides:

"The Appellate Court may exercise such original jurisdiction as may be necessary to the complete de-

termination of any cause on review." (SHA Const Art VI § 7.)

A similar provision is incorporated in Ill Rev Stats 1967, c 37, § 32.1.

In view of the trial court's superior position of observation, the better practice is for a trial court to pass upon all motions presented in the post-trial motion and to preserve the reviewing court's role as one of review of such decisions. Rigid adherence to this belief would compel us to remand this case to the trial court to pass upon the motion for a new trial. The decision of the trial court then would be the potential subject of another appeal. The history of our present section 68.1 of the Civil Practice Act discloses a studied attempt by the legislature and by the Supreme Court to prevent the necessity of multiple appeals on motions pertaining to post-trial relief. In accord with this endeavor, we deem it advisable for an Appellate Court, pursuant to the authority granted by the constitutional provision and statute above cited, to exercise original jurisdiction and pass upon the defendant's motion for a new trial even though the trial court failed to do so.

Three propositions are urged by the defendant in this court in support of its alternative motion for a new trial:

1. The jury's verdict was against the manifest weight of evidence;

2. The verdict of the jury was a result of bias and prejudice occasioned by: (a) the argument of plaintiff's counsel to the jury, (b) the improper statements and actions of plaintiff's counsel in moving for the production of the defendant's president in open court before the jury; and

3. The assignment judge at the trial court erred in denying the motion for a continuance because of the absence of William J. Schmidt, president of defendant.

■ We have heretofore referred to much of the evidence relating to the disputed questions of fact. We stated above that we felt there was substantial evidence to support the jury's verdict when tested in light of the rule of the Pedrick case relating to motions for judgment notwithstanding the verdict. We also feel that there is substantial evidence on disputed questions of fact to support the jury's verdict when tested by the rules relating to a motion for a new trial. A reviewing court will not disturb a verdict where the evidence is conflicting unless the verdict is clearly wrong or unless the court is satisfied that the verdict is against a manifest weight of evidence and that an opposite conclusion is clearly evident. A verdict will not be set aside merely because the jury could have found differently or because judges feel that other conclusions would be more reasonable. Cardona v. Toczydlowski, 35 Ill App2d 11, 180 NE2d 709.

■ The alleged improper remark of counsel in his closing arguments was not objected to by the defendant. The general rule is that objections must be made to the prejudicial argument in the trial court and a ruling obtained thereon before the alleged prejudicial argument can be assigned as error in a court of review. Belfield v. Coop, 8 Ill2d 293, 134 NE2d 249.

■ The Belfield case also announced an exception to the general rule as follows at page 313:

"If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant cannot receive a fair trial and the judicial process stand without deterioration, then upon review this court may consider such assignments of error even though no objection was made and no ruling made or preserved thereon."

At the hearing on the defendant's post-trial motion, the trial judge criticized plaintiff's counsel for making cer-

tain derogatory statements concerning the defendant in the closing argument. The trial judge did not have the benefit of a transcript of the arguments when he made his remarks. We have read the transcript of the closing arguments. The derogatory language which the trial court attributed to plaintiffs' counsel is not contained therein. We also do not find language in these arguments from which such derogatory language could be reasonably inferred. While there may have been portions of the argument to which the trial court could have sustained objections, the argument was not prejudicial within the exception to the general rule announced in Belfield, supra.

 Plaintiff had served a notice on defendant's counsel pursuant to the provisions of Supreme Court Rule 237 to compel the presence of the president of defendant, North Shore Farms, Inc., William J. Schmidt. Prior to the commencement of the trial the defendant presented a motion for continuance alleging that Schmidt was in Florida and could not be present until a later date. The motion was denied. Thereupon, plaintiff called as its first witness the president of defendant, North Shore Farms, Inc., William J. Schmidt, pursuant to notice served under Supreme Court Rule 237. The defendant claims that the plaintiff's conduct in this regard was prejudicial but has cited no authority for its position. We can see nothing prejudicial to the defendant in the conduct of the plaintiff.

 As to the refusal of the assignment judge and the trial court to grant the defendant's motion for a continuance because of the absence of this witness, we do not think that this refusal was an abuse of judicial discretion. Supreme Court Rule 231(a) provides in part:

"If either party applies for a continuance of a cause on account of the absence of material evidence, the motion shall be supported by the affidavit of the party so applying or his authorized agent. The af-

fidavit shall show (1) that due diligence has been used to obtain the evidence, or the want of time to obtain it . . . ."

The affidavit filed in support of the motion for a continuance recites that Schmidt is engaged in a farming operation in Florida and due to manpower shortage he will not be able to attend the trial of the case until after May 1, 1968. The affidavit was signed by Schmidt and was dated December 11, 1967. It was filed along with a motion for continuance on January 3, 1968. The case was called for trial February 1, 1968. The affidavit had been made more than seven weeks before the case was called for trial. It is hard to understand why the defendant could not have made arrangements during this seven-week period to leave his farming operation in Florida for two or three days while he attended court in Chicago. Furthermore, no reason is shown in the motion why the evidence deposition of this witness was not taken during this seven-week period. The case was six years old when called for trial. The motion for a continuance and affidavit do not show that due diligence was used to obtain the testimony of this witness or the wanting of time to obtain it. We feel that the assignment judge and the trial court both properly refused the motion for a continuance.

Accordingly, the motion of the defendant, North Shore, for a new trial is denied.

The judgment of the trial court is reversed and the cause is remanded with directions to enter judgment in favor of the plaintiffs, John Franks and Genevieve Franks, and against the defendant, North Shore Farms, Inc., in the amount of the verdict returned by the jury and for interest thereon and costs.

Reversed and remanded with directions.

STOUDER, P. J. and ALLOY, J., concur.