THE PEOPLE *ex rel.* JUANA MARIA GOMEZ, Plaintiff-Appellant, *v.* PAUL WEDECH, Defendant-Appellee.

First District (4th Division)   No. 77-814

Opinion filed March 16, 1978.

William J. Scott, Attorney General, of Chicago (Paul V. Esposito, Assistant Attorney General, of counsel), for appellant.

Alan Kawitt, of Chicago, for appellee.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The State appeals from a judgment of the circuit court of Cook County discharging defendant in a proceeding brought under the Paternity Act. (Ill. Rev. Stat. 1975, ch. 106¾, par. 51 *et seq.*) The State contends that the trial court's decision was against the manifest weight of the evidence.

We reverse and remand.

Plaintiff instituted this proceeding by filing a complaint charging that defendant, Paul Wedech, was the father of a daughter born out of wedlock on February 1, 1976. Defendant waived a jury trial and was tried by the court.

At trial, defendant was called by the State as an adverse witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 60.) Defendant, who was 32 years old, had been employed at a gas station for 4 years. He first met the plaintiff in 1972. Two months later, he began seeing her and having sexual intercourse with her which continued on a regular basis until Christmas of 1974. They usually met at his apartment. During the period of 1972 to 1974, defendant claimed to have given plaintiff $6,000 in cash gifts. After Christmas of 1974, they discontinued their sexual relationship, but subsequently he saw her at the gas station.

In December 1975, defendant went to Brazil, returning February 12, 1976. During this time he corresponded with the plaintiff. Letters and postcards sent from Brazil were admitted into evidence. When confronted by the plaintiff with the accusation that he was the father, defendant denied it, suggesting that they take blood tests.

The plaintiff, Juana Maria Gomez, testified through an interpreter. She was unemployed and had a child, although she had never been married. Two months after she and defendant met, they began having sexual intercourse approximately twice a week. She and defendant had an

argument in the early spring of 1975. For 5 or 6 weeks they did not have sexual relations but later resumed. During the months of April through July of 1975, she had sexual intercourse with him on a regular basis in his apartment. She denied having sexual relations with anyone else.

Around the beginning of June, when she missed her menstrual period, she went to visit a doctor; her pregnancy test was positive. When she informed defendant that she was pregnant, defendant told her that he did not want her to have the baby and said that he was going to Brazil. Subsequently she received letters and cards from him from Brazil.

The baby was expected on February 22, 1976, but was born on February 1, 1976. When plaintiff reached defendant by telephone on February 12, 1976, he told her that he already knew that the baby had been born. She related that on another occasion he said that he was the father. Plaintiff testified she never received money from the defendant. She testified further that from the time she met him until the date the child was born, she never had sexual intercourse with any other man.

Milagros Gomez, plaintiff's sister, testified that in the period from 1974 to the spring of 1975 defendant would drive to her house to visit her sister. Florence Kurban testified that she, plaintiff and her sister went to the defendant's apartment sometime in 1975.

The State introduced into evidence a photograph of plaintiff and defendant standing together taken at his apartment while she was pregnant. A photograph taken of them in 1974 at the gas station was also admitted, as was a photograph of him which he allegedly gave to her before he went to Brazil.

Defendant testified in his own behalf: He first met the plaintiff in 1972 and had sexual relations with her until Christmas of 1974. He gave her money on numerous occasions. After she was pregnant, they had conversations at the gas station, but he told her that her frequent visits were jeopardizing his job. He explained that he kept in contact with her after she became pregnant because he was afraid she would cause him to lose his job if he refused to see her.

At the conclusion of the trial, the court found that the State had not carried its burden of proof, mainly because of inconsistencies in the plaintiff's testimony, and her inability to remember when certain events occurred.

In a paternity case, questions of the credibility of the witnesses and the weight to be given their testimony are for the trier of fact, and these findings must be affirmed on review unless they are clearly and palpably erroneous. *People ex rel. Walsh v. Kilbride* (1974), 16 Ill. App. 3d 820, 306 N.E.2d 879.

After a careful review of the record, we find that the trial court's findings are clearly erroneous. It is evident that if the plaintiff's testimony

is believed, only defendant had sexual intercourse with her around May of 1975, which was when conception occurred. The trial court chose to discredit the plaintiff's testimony because her testimony contained seeming inconsistencies relating to the argument she had with defendant and the subsequent resumption of sexual relations. Plaintiff's testimony showed that they had an argument "in early spring" of 1975 which resulted in a discontinuation of sexual relations for 5 or 6 weeks. Plaintiff also testified that they had sexual relations in April through June of 1975. If the 5-to-6 week period were computed from the official beginning of spring in late March, this might seem to contradict plaintiff's testimony that they had sexual relations in April. Considering that descriptions of spring are often based on the weather rather than the calendar, we think that this testimony is not necessarily contradictory. In any case, we view this only as a possible contradiction and one which is easily explained. Using the most conservative estimations, plaintiff's testimony still established that sexual intercourse with defendant occurred in May of 1975.

We also find that the trial court's evaluation of plaintiff's credibility based on her uncertainty about dates is not substantiated by the record. Her response to defense counsel's question about the date of her last menstrual period was unresponsive and defensive. However, on redirect examination, she explained that she visited her doctor when she missed her period, which was in late May or June of 1975. Medical records received into evidence with no objection showing results of the pregnancy test substantiate this testimony. Plaintiff's initial uncertainty is not unusual considering the lapse of time between the events and trial and the fact that examination took place through an interpreter.

Although defendant denied having sexual relations any time after 1974, his testimony must be viewed very cautiously because of contradictory inferences drawn from other indisputable evidence. Photographs of plaintiff and defendant taken while at defendant's apartment and testimony of two other witnesses established they were together on occasions subsequent to the time at which defendant claims they had discontinued relations. Also, defendant frequently corresponded with plaintiff from Brazil. We believe that the extent of this correspondence shows more than an appeasing attitude toward one whom defendant feared would cause him to lose his job.

While demeanor is undoubtedly an important consideration in the evaluation of a witness' testimony, we find that the trial court's discrediting of plaintiff's testimony was unjustified for the reasons which it stated on the record.

■■ Defendant's testimony established that plaintiff and defendant engaged in sexual intercourse over the course of at least two years.

According to plaintiff, after a period of estrangement, the couple resumed relations up until and during the time in which plaintiff became pregnant. It was uncontroverted that plaintiff had no sexual relations with any other man during this period. Plaintiff testified that after she told defendant about her pregnancy he stated that he did not want her to have the baby and was going to Brazil. Evidence in the record contradicted defendant's claim that their relationship ended in 1975 and established to the contrary a continuing relationship up until and after the time the baby was born. We conclude that the evidence established that defendant was the father of the child. *People v. Rimicci* (1968), 97 Ill. App. 2d 470, 240 N.E.2d 195; *People ex rel. Dalman v. O'Malley* (1963), 43 Ill. App. 2d 95, 192 N.E.2d 589.

■■ Defendant argues that the failure of the State to produce the results of the blood tests at trial raises the presumption that the results would have been unfavorable to the State. This contention has no merit. Admission of such evidence is governed by the Act on Blood Tests to Determine Paternity (Ill. Rev. Stat. 1975, ch. 106¾, par. 1 *et seq.*), which provides in pertinent part: "The results of the tests shall be receivable in evidence only if definite exclusion is established." Because there is no suggestion in the record that the test established exclusion, the State had no burden to produce the results.

Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings to determine such matters as support.

Reversed and remanded.

JOHNSON, P. J., and LINN, J., concur.