THE PEOPLE *ex rel.* PAULA JOHNSON, Plaintiff-Appellant, *v.* ROBERT HAMPTON, Defendant-Appellee.

First District (5th Division)    No. 78-948

Opinion filed March 30, 1979.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellant.

James J. Doherty, Public Defender, of Chicago (Anthony F. Rusnak and James L. Rhodes, Assistant Public Defenders, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

On July 3, 1975, plaintiff, Paula Johnson, brought this action against defendant, Robert Hampton, to establish the paternity of a child born to plaintiff. (Ill. Rev. Stat. 1977, ch. 40, par. 1354.) Defendant pleaded not guilty to the charge and demanded a jury trial. Following the denial of plaintiff's motion for a directed verdict, the jury found defendant not guilty of the charge of paternity. In her post-trial motion plaintiff sought judgment *n.o.v.*, a directed verdict or a new trial. The court denied this motion and the instant appeal followed.

On appeal plaintiff contends that: (1) the trial court erred in denying her motions for a directed verdict and judgment *n.o.v.*; (2) the trial court erred in denying her motion for a new trial; and (3) the jury instructions given were erroneous. We affirm. The following pertinent evidence was adduced at trial.

### Plaintiff's Case

Defendant testified as an adverse witness pursuant to section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 60.) He first met the plaintiff in July of 1972, but did not see her again until August. He then began seeing plaintiff on a weekly basis until October of 1972. He first had sexual intercourse with plaintiff in August 1972, and continued to have intercourse with her on a weekly basis until October 1972. During October he had intercourse with plaintiff only once and that was for the last time. At one point, he said that this was October 1972, but later said it was October 1973. Defendant was impeached with his sworn answers to plaintiff's interrogatories, wherein he stated that the last time he had intercourse with plaintiff was January 1973. Defendant then testified that

he had seen the child but never visited him at plaintiff's home. He identified three photographs of himself and plaintiff.

On examination by his counsel defendant stated that he had earlier given October 1973 as the last time he had relations with plaintiff but was mistaken and meant October of 1972. He was also mistaken on his answer to the interrogatories as to the last time he had relations with plaintiff. He could not remember when the photographs were taken.

Paula Johnson testified. She first met defendant in August 1972. She began dating him in October and first had intercourse with him in November 1972. At about this time she was having a thyroid problem and entered a hospital on November 9 for an examination. She remained in the hospital for a week and was picked up by defendant and brought to his apartment. She lived with defendant from November 1972 through January 1973. During that time she had sex with him about four or five times a week. In December 1972 she went into the hospital for surgical removal of her thyroid. Her last period before pregnancy was from November 9 to 16, 1972. While in the hospital in December it was irregular and she began "spotting."

Once out of the hospital, she resumed her relationship with defendant. In February 1973, she told defendant that she might be pregnant and he told her not to worry, that they were going to have a little boy. They also discussed an abortion. In February 1973, she had a pregnancy test, and in March she discovered that she was four months pregnant. On July 22, 1973, she gave birth to a baby boy.

About a week later, she telephoned defendant and told him the baby had no food or diapers and asked him to bring some to her house. Later that day defendant did bring these things.

Around Christmas 1973, defendant brought a bag of toys for the baby to her mother's house. Plaintiff identified one of the photographs showing defendant, herself and her baby accompanied by her family. It was taken by her brother at her mother's house on Christmas of 1973. During December 1972 through April 1973, she had sex with defendant about five or six times a week. After the baby was born she had intercourse with defendant in the fall of 1973.

Plaintiff identified a second picture as being of her and defendant at a lounge taken in January 1973. She identified a third picture of herself and defendant as taken at his birthday party in November 1973. All three photographs were admitted into evidence.

On cross-examination plaintiff admitted that the baby was born two months premature. She stated that the last time she had sexual relations with defendant was in May of 1975. She was impeached with her sworn answers to interrogatories wherein she answered that she last saw defendant socially in May 1974. The witness stated that she did not

change the address on her driver's license, voter's registration, or her postal address while she lived with defendant. She denied finding defendant with any other women in his apartment in October 1972 and also denied taking birth control pills for her thyroid condition. On redirect, she denied telling defendant that she was taking birth control pills.

Paul Johnson, plaintiff's brother, testified that he took the photograph of plaintiff, defendant, and plaintiff's child, accompanied by other members of plaintiff's family, around Christmas 1973 at his mother's house. He remembered this since he had received the Polaroid camera which he used for Christmas that year. At that time he noted the date and subjects on the back of the photograph.

Deloris Johnson, plaintiff's mother, testified that plaintiff was living at home off and on in January 1973. She knew that her daughter was staying with defendant. In November 1972 she and her husband had gone out with plaintiff and defendant socially. About a week after plaintiff had her child, defendant brought milk and other items for the baby to plaintiff who was staying at Mrs. Johnson's house. Again, around Christmas 1973, defendant brought a bag of gifts for the baby.

### For the Defense

Defendant testified that he first met plaintiff in July 1972 and was her lover from July to October 1972. While he was dating plaintiff, she told him that she was taking birth control pills, but that since she was switching pills, he should use a contraceptive. In the first week of October 1972, defendant had two female friends at his apartment when plaintiff came over to talk to him. An argument started and he told plaintiff to leave. Plaintiff then tried to stab him with a pair of scissors. After that time, he did not date plaintiff. The next time that he saw her was at his brother's wedding reception in July 1973. He had never told anyone that he was the father of plaintiff's child and never brought gifts for the child. When asked whether he was the father of the child, he replied, "I couldn't answer that."

At the close of the defense case, plaintiff moved for a directed verdict which was denied.

During the instruction conference, plaintiff objected to defendant's instruction which characterized the plaintiff's burden of proof as "preponderance of the evidence" rather than "more probably true than not true." After argument, the trial court overruled the objection and the instruction was given.

The jury found the defendant not guilty of the charge of paternity. Plaintiff's post-trial motions for judgment *n.o.v.* or alternatively a new trial were overruled and this appeal followed.

OPINION

■■ Plaintiff first contends that the trial court erred in denying her motion for a directed verdict and judgment *n.o.v.* The Civil Practice Act applies to paternity actions in the absence of specific provisions in the Paternity Act. (Ill. Rev. Stat. 1977, ch. 40, par. 1366.) Section 68.1 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 68.1) provides for entry of directed verdicts and judgments *n.o.v.*, and no specific provision of the Paternity Act provides otherwise. The test for granting directed verdicts and judgments *n.o.v.* was stated in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14, as follows:

> "* * * In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

From a review of the evidence presented in this case, plaintiff contends that she has met this test. Although defendant freely admitted to having sexual intercourse with plaintiff, he denied having intercourse with her or seeing her socially after October 1972. Plaintiff concedes that this denial standing alone might create a factual dispute requiring jury determination, but contends that when viewed with all the evidence in this case, the denial loses any probative value. She specifically points to defendant's prior inconsistent answers to interrogatories, the evidence of an ongoing relationship presented in her own case, and the photograph of defendant with plaintiff and her child taken at Christmas 1973, as showing that a continuing relationship existed. Plaintiff cites *People ex rel. Gomez v. Wedech* (1978), 58 Ill. App. 3d 518, 374 N.E.2d 849, as being close factually with the instant case. There a directed verdict for defendant was entered by the trial court. The appellate court stated the general rule:

> "In a paternity case, questions of the credibility of the witnesses and the weight to be given their testimony are for the trier of fact, and these findings must be affirmed on review unless they are clearly and palpably erroneous." (58 Ill. App. 3d 518, 520, 374 N.E.2d 849, 851.)

The court went on to note that defendant's claim that he had stopped seeing plaintiff was contradicted by photographic evidence. Although the plaintiff there sought only a new trial, the court found that defendant was the father and remanded for a hearing on the amount of support.

■ The particular facts in *Gomez* may have warranted that result; however, we do not feel that entry of a judgment *n.o.v.* is proper in this case. Although plaintiff did present evidence that defendant saw her after October 1972, the jury found that he was not the father of her child. Viewing all the evidence most favorably to the defendant, we do not find

that it so overwhelmingly favors the plaintiff that the verdict cannot stand. The trial court did not err in denying plaintiff's motions for a directed verdict and judgment *n.o.v.*

Plaintiff contends that the trial court erred in denying her motion for a new trial. On a motion for a new trial the court will weigh the evidence and set aside the verdict if it is contrary to the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) However, a verdict may not be set aside simply because a judge believes a different conclusion would be more reasonable. *Bank of Marion v. Robert "Chick" Fritz, Inc.* (1974), 57 Ill. 2d 120, 311 N.E.2d 138.

■■ In the instant case, defendant denied seeing plaintiff except at a wedding reception after October 1972. Plaintiff testified that her last menstrual period before pregnancy was from November 9 to 16, and described a continuing relationship with defendant. The photograph of defendant with plaintiff and the child would clearly show that defendant met with plaintiff at least socially after October 1972. However, it did not prove defendant had intercourse with plaintiff after October 1972 or that he was the father of the child, and apparently the jury did not infer this. In paternity cases, questions of the credibility of witnesses and the weight to be given to their testimony are for the trier of fact. (*People ex rel. Walsh v. Kilbride* (1974), 16 Ill. App. 3d 820, 306 N.E.2d 879; *People ex rel. Gomez v. Wedech* (1978), 58 Ill. App. 3d 518, 374 N.E.2d 849.) The jury heard and saw the evidence firsthand, judged credibility and weight, and found defendant not guilty. There is support in the record for that verdict and it is not against the manifest weight of the evidence. The trial court did not err in denying plaintiff's motion for a new trial.

Plaintiff's final contention is that she should be granted a new trial because the jury was improperly instructed. Her major objection was to an instruction submitted by defendant which was a modified form of Illinois Pattern Jury Instructions, Civil, No. 21.02 (2d ed. 1971) (hereinafter cited as IPI Civil). The instruction set out all the elements plaintiff must establish to prove paternity and required that each be proved "by a preponderance of the evidence." She argues that by pleading not guilty and then failing to file an answer to her complaint, defendant admitted all the elements, except that he was the father of the child. We do not agree.

■■ A paternity action is criminal in form but civil in nature. (*Cessna v. Montgomery* (1976), 63 Ill. 2d 71, 344 N.E.2d 447.) Although defendant did not deny each and every allegation of the complaint, this failure should not be considered an admission of all the elements of the paternity action except for the fact of paternity itself. Since the Paternity Act specifically provides for a plea of not guilty (Ill. Rev. Stat. 1977, ch. 40, par. 1355), it is sufficient to put all material elements in issue. (*Commesser*

*v. Laken* (1963), 43 Ill. App. 2d 324, 193 N.E.2d 337, *cert. denied* (1964), 379 U.S. 822, 13 L. Ed. 2d 32, 85 S. Ct. 43, *rehearing denied* (1964), 379 U.S. 924, 13 L. Ed. 2d 337, 85 S. Ct. 272.) The portion of the challenged instruction setting out the elements to be proved was not erroneous.

Plaintiff claims that the portion of the instruction stating that plaintiff must prove the elements of paternity "by a preponderance of the evidence" was erroneous. Supreme Court Rule 239 (Ill. Rev. Stat. 1977, ch. 110A, par. 239) requires that in a civil case applicable Illinois Pattern Jury Instructions be used unless the court determines that they do not accurately state the law. Since IPI Civil 21.01 defines burden of proof as "more probably true than not true," plaintiff claims the use of "by a preponderance of the evidence" in the instruction was error. Additionally, since an earlier given instruction had defined the burden of proof as "more probably true than not," it is claimed that the use of two standards would confuse a jury. Plaintiff argues that laymen would not recognize that the two standards are the same, and that given the criminal appearance of the proceeding, a jury would think that a "preponderance of the evidence" is a higher standard of proof than is required in a civil case.

■■ The burden of proof as stated in the Paternity Act is the civil standard, proof by a "preponderance of the evidence." (Ill. Rev. Stat. 1977, ch. 40, par. 1355.) This standard is legally synonymous with "more probably true than not true." (See McCormick, Evidence §339 (2d ed. 1972).) The introduction of the IPI Civil section dealing with burden of proof notes that:

> "* * * IPI Civil 21.01 defines burden of proof in terms of what is more probably true than not true. This is considered preferable to a statement requiring proof by a 'preponderance' or 'greater weight' of evidence." (IPI Civil No. 21.00.)

Although "more probably true than not true" is the preferred definition, the use of the statutory language on burden of proof, a legally synonymous standard was not error. Preponderance is a common word whose meaning would be understood by a jury without further instruction. (*Hedge v. Midwest Contractors Equipment Co.* (1964), 53 Ill. App. 2d 365, 202 N.E.2d 869.) The instruction accurately stated the burden of proof.

The fact that an earlier instruction used the preferred definition would not confuse the jury. Instead, it would clearly instruct the jury that the burden of proof was only the civil standard and accurately define it. The civil nature of the action was clearly conveyed by the instruction. We do not believe the criminal aspects of the case would lead a jury to believe a higher standard of proof was required.

■■ Plaintiff also contends that submission of two other instructions

patterned after IPI Criminal instructions furthered the impression that this was a criminal action and was error. The instructions merely stated that the complaint is the formal method of charging defendant and is not evidence of guilt, and that defendant was charged with paternity and had pleaded not guilty. We do not feel their use in this case was improper or confused the jury.

The instructions when considered as a whole fairly and accurately stated the law and did not mislead the jury. *Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 369 N.E.2d 155; *Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SULLIVAN, P. J., and WILSON, J., concur.