THE PEOPLE *ex rel.* CATHY LOU REYNOLDS, Plaintiff-Appellee, *v.*
DAVID ALDRIDGE, Defendant-Appellant.

Fourth District   No. 16820

Opinion filed July 8, 1982.

Steven C. Mills, of Springfield, for appellant.

J. William Roberts, State's Attorney, of Springfield (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for appellee.

JUSTICE MILLS delivered the opinion of the court:

Paternity action.

A jury verdict for the defendant was declared by the trial judge to be clearly erroneous and unsupported by the evidence.

The trial court then granted plaintiff judgment *non obstante veredicto* and conditionally granted a new trial.

We reverse the judgment *n.o.v.* and remand for a new trial.

The facts are lengthy, but must necessarily be set forth in detail. The complaining witness, Cathy Reynolds, testified at trial that a child was born to her on April 19, 1978; that she was unmarried; and that the child was living and had never been adopted. Reynolds had known and dated the defendant since she was 13. Beginning on July 10, 1977, complaining witness and defendant began having sexual intercourse on a regular basis and intermittently cohabited through the end of August 1977. They did not use any birth control measures. The complaining witness discovered she was pregnant in September of 1977 and attempted to notify the defendant but was unsuccessful. Both before and after the child was born, defendant engaged in actions consistent with his paternity of the child. These acts included, stating the child was his, playing with and expressing affection toward the child, wanting to change the child's surname to his own, and acknowledging a responsibility to support the child and marry the complaining witness. There was no denial of the testimony regarding Reynolds' and defendant's sexual relationship and defendant's behavior *vis-a-vis* the child. Several witnesses corroborated these facts.

The controversy centers around the credibility of Reynolds' testimony regarding the date of conception and her sexual activities during the time of conception. At trial, Reynolds admitted to having cohabited with a Douglas Hurley for 1½ years until approximately April of 1977. In May she went to Florida with a friend, "Danny," and her brother. She testified that she broke off the relationship with Hurley and did not have sexual intercourse with any other man other than the defendant from June through August of 1977. However, at a preliminary hearing, Reynolds said that she had engaged in sexual intercourse with Hurley in June. Again, at trial, Reynolds claimed that she spent June in Iowa with Karla Hendricker ·

looking for a job. Corroborating testimony varied as to whether Reynolds went to Iowa in early June or later in the month. Christine Todd testified that Reynolds attended a birthday party in the company of Hurley on June 13, in Springfield, and that Reynolds dated a Maynard Coyle at least once in June. Cathy Hendricker said that until June 15, Hurley was spending the nights with Reynolds and that they continued to see each other through the summer of 1977.

Reynolds admitted to having told Thelma and Karla Hendricker (Hurley's mother and half sister, respectively) that Hurley was the father. She claimed that the reason for this was that she wanted to move in with the Hendrickers because she became scared when she discovered she was pregnant and had moved away from home after an argument with her mother. There was contradictory testimony regarding whether Reynolds cohabited with Hurley when she lived with the Hendrickers during her pregnancy. Cathy Hendricker, Karla Hendricker's sister, and defendant's girlfriend at the time of trial, said Reynolds slept in Hurley's room, but Reynolds and Karla Hendricker denied it.

Reynolds testified that her last menstrual period before her pregnancy was in early July as she began relations with the defendant. Karla Hendricker corroborated this. However, at the preliminary hearing Reynolds had testified that her last period was in June. Christine Todd testified that Reynolds told her in June, before she went to Iowa, that Reynolds thought she was pregnant and that sometime in June that was confirmed by a doctor. Todd and Cathy Hendricker also claimed that Reynolds told them in September that she was three months pregnant and that the baby was due in March. Dr. Travis L. Hindman testified that blood tests on Reynolds, Reynolds' child and Hurley precluded Hurley from being the father.

■ The standard for entering a judgment *n.o.v.* in Illinois is the well-established *Pedrick* test. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) The *Pedrick* standard is applicable to paternity actions. *Petrous v. Roberts* (1973), 12 Ill. App. 3d 992, 299 N.E.2d 322.

Defendant contends that (1) Reynolds' prior inconsistent statements regarding her last menstrual period and her relations with Hurley in June of 1977 impeach her credibility, and (2) the substantive effect of Reynolds' prior inconsistent statements together with the other testimony regarding the due date of the child provides sufficient evidence so that the jury's verdict cannot be said to be erroneous.

■■ The credibility of witnesses is crucial in paternity actions, and the jury is not required to believe a witness' statement merely because it is unrebutted. (*People ex rel. Martin v. Presswood* (1980), 85 Ill. App. 3d 975, 407 N.E.2d 770.) However, plaintiff cites three cases where the trier

of fact's evaluation of the complainant-mother's credibility was overruled on appeal. In *Petrous*, the court affirmed a judgment *n.o.v.* entered in favor of the mother where a defendant admitted having intercourse with plaintiff several times during the period of conception, often without the use of protective devices, stated that he possibly could be the child's father, and could not substantiate his assertion that plaintiff had relations with others. Plaintiff testified that she did not have relations with anyone other than the defendant during the period of conception.

In *People ex rel. Temple v. Williams* (1976), 40 Ill. App. 3d 764, 353 N.E.2d 94, error was found in the lower court's denial of plaintiff's motion for a judgment *n.o.v.* in a paternity action. The complaining witness denied having sexual relations with any male other than the defendant, there was no evidence that she did so, and defendant admitted having sexual relations with her during the period of conception. There was no denial of complainant's testimony that defendant and she discussed marriage when she thought she was pregnant, and defendant admitted to a friend that he could be the father of the child. Central to the decision was the court's finding that plaintiff's contradiction of her own testimony did not render it unworthy of credit because the matters contradicted were immaterial.

In *People ex rel. Gomez v. Wedech* (1978), 58 Ill. App. 3d 518, 374 N.E.2d 849, the lower court's judgment discharging a father in a paternity proceeding was reversed. The evidence established that conception occurred around May of 1975. Plaintiff testified at one point that she had sexual relations with defendant in April through June of 1975 but also stated that they had an argument in "early spring" of 1975 which resulted in a discontinuation of sexual relations for five or six weeks. On cross-examination plaintiff's response to defense counsel's question about the date of her last menstrual period was unresponsive and defensive. The court found the contradiction and uncertainty in plaintiff's testimony was easily explained by the lapse of time between the events and trial, the fact that examination took place with an interpreter, and that descriptions of spring are often based on the weather rather than the calendar. Also medical records substantiate plaintiff's testimony that she did not have sex with any other man during the relevant period. The court found that the trial court's evaluation of plaintiff's credibility was not substantiated.

The common elements in these three cases were (1) the defendant's sexual relationship with the complaining witness during the time of conception was admitted; (2) the defendant either admitted at some time that he was the father or took actions consistent with his paternity; (3) the complaining witness testified that she had not engaged in sexual relations with any male other than the defendant during the period of conception and was not contradicted (defendant in *Petrous* merely asserted the

contrary without substantiation); and (4) the defendant was not impeached on any material fact.

In the present case, there was uncontradicted multiple testimony establishing Reynolds' and the defendant's sexual relations and defendant's actions consistent with his fathering the child. That is where the parallel ends between these facts and the cases cited by the State. The complaining witness here contradicted herself regarding sexual relations with other men. At a preliminary hearing held in August of 1978, Reynolds testified that she had sexual relations twice with Hurley in June of 1977. At trial, in August of 1980, she claimed to have had no sexual relations with any man other than the defendant from June through August of 1977 and said she did not remember giving a contrary answer at the preliminary hearing.

■■ While defense counsel admitted at oral argument that the blood test conclusively precluded Hurley's paternity, that does not make the impeachment immaterial. The complaining witness' sexual partners are a central issue in paternity actions. The jury could have concluded that since Reynolds' recollection of her sexual activities during the relevant period changed between the preliminary hearing and trial, and that during that interval it became known that Hurley could not have been the father, then perhaps her recollection was not to be trusted as regarding other sexual partners. The record indicates that Reynolds went to Florida with a "Danny" in May of 1977 and dated a Maynard Coyle in June of 1977, but no testimony asserted any sexual activity on the part of the complaining witness with anyone other than the defendant. However, it is not incumbent upon the defendant to adduce evidence of other sexual partners once doubt has been cast on the complaining witness' testimony regarding her sexual activities. *People ex rel. Martin v. Presswood* (1980), 85 Ill. App. 3d 975, 407 N.E.2d 770.

Furthermore, the testimony of Christine Todd and Cathy Hendricker to the effect that Reynolds was pregnant in June and that the baby was due in March is evidence that conception took place prior to Reynolds' liaison with the defendant beginning on July 10. Reynolds' earlier testimony that she did not have a menstrual period in July also supports a June conception. (Reynolds' contradictory statement at trial that she did have a menstrual period in July provides a further material impeachment of her as a witness.)

■■ At oral argument the State questioned the medical probability of a conception sufficiently early that Reynolds could have known that she was pregnant in June, as Todd testified, and yet have delivered a normal child in mid-April. Other than Reynolds' testimony that the child was born four days overdue, the record contains no evidence regarding the term of the pregnancy or the normality of the child. Even if Reynolds could not have known of the pregnancy in June, the testimony that

Reynolds stated in September that the child was due in March and that she had no menstrual period in July would support a jury conclusion that conception occurred before the defendant could have impregnated Reynolds. Therefore, we conclude that the complaining witness was impeached on two material issues and that there was substantive evidence to support the jury's findings.

The State urges that the judgment *n.o.v.* was proper because the defendant conceded the underlying factual issues by failing to either object to or deny the State's request for admissions within the 28 days prescribed by statute. A request for admissions was filed on May 31, 1979, in accordance with Supreme Court Rule 216(a). (Ill. Rev. Stat. 1979, ch. 110A, par. 216(a).) It requested that the defendant admit that he had engaged in sexual intercourse with Cathy Reynolds during the period June 1, 1977, through August 31, 1977, and that he was the father of Reynolds' child. There is no record that the defendant ever filed an answer. While there was a motion filed with the court in September of 1979 that the requested admissions be deemed true since unanswered, there was never a hearing or ruling on the motion. The failure of the defendant to respond to the admission request was never offered for evidence or any other purpose at trial.

II. The question of the effect of a failure to respond to an admission request, which failure is not offered at trial, is one of first impression in Illinois. Supreme Court Rule 216(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 216(c)) provides in part:

> "Each of the matters of fact * * * of which admission is requested is admitted unless, within 28 days after service thereof, the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which admission is requested or setting forth in detail the reasons why he cannot truthfully admit or deny those matters or (2) written objections on the ground that some or all of the requested admissions are privileged or irrelevant or that the request is otherwise improper in whole or in part."

■■■ We find no merit in the State's argument that the trier of fact can be reversed by the trial judge on the basis of facts which were available at the time of trial but never proffered. The trial court is to base a judgment *n.o.v.* solely on the basis of evidence introduced at trial. (See *Darda v. Chicago Transit Authority* (1968), 100 Ill. App. 2d 94, 241 N.E.2d 478; *Farmer v. Alton Building & Loan Association* (1938), 294 Ill. App. 206, 13 N.E.2d 652.) A party wishing to rely on an admission requested but not answered must at some point in the trial introduce the party's failure to answer before the failure can have any effect. See *Gilbert v. General Motors Corp.* (2d Cir. 1943), 133 F.2d 997, *cert. denied* (1943), 319 U.S.

743, 87 L. Ed. 1700, 63 S. Ct. 1031, applying Rule 36 of the Federal Rules of Civil Procedure, from which Supreme Court Rule 216 was derived. Ill. Ann. Stat., ch. 110A, par. 216, Historical & Practice Notes, at 208 (Smith-Hurd 1968).

■■ Furthermore, by introducing evidence on the issues which would have been determined by the admissions, the State waived any right to rely on the admissions. In *Welch v. City of Evanston* (1980), 87 Ill. App. 3d 1017, 1023, 409 N.E.2d 450, 455, the court refused to order the admission of unanswered requested admissions and explained:.

> "Plaintiffs were aware their request for admission was not answered in a timely manner. Nevertheless, plaintiffs introduced evidence [directly on those issues]. This conduct at trial waived plaintiffs' right to rely on defendant's admissions."

The *Welch* holding is apparently an extension of the rule that when a defendant does not raise the issue of plaintiff's failure to respond to affirmative defenses and pleadings, and then introduces evidence at trial on those allegations, defendant may no longer claim the allegations were admitted because of the failure to respond. *Sottiaux v. Bean* (1950), 408 Ill. 25, 95 N.E.2d 899; *Brokerage Resources, Inc. v. Jordan* (1980), 80 Ill. App. 3d 605, 400 N.E.2d 77; *Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 253 N.E.2d 45.

The State clearly set out at trial to prove the two assertions contained in the request for admissions. We find the *Welch* result persuasive and hold that the State waived its right to rely on defendant's admissions when it introduced evidence directly on those issues for which admissions were requested.

■■ The trial court's final order granted judgment *n.o.v.* for the State and conditionally granted a new trial. The defendant's notice appealed the entire order, but neither defendant's brief nor defense counsel at oral argument raised any objections to the order for a new trial. The issue of a new trial was thus waived. 73 Ill. 2d R. 341(e)(7); *Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 404 N.E.2d 213.

Reversed in part and remanded for a new trial.

GREEN, P. J., and TRAPP, J., concur.